TIEMANN v. KRAATZ et al.

(Circuit Court of Appeals, Eighth Circuit. February 23, 1898.)

No. 951.

1. PATENTS—INVENTION.

In a case used for the display of wreaths, crosses, emblems, etc., on graves, there is no invention in so fashioning the grooves or slots in which the glass is secured as to form a tubular or semicircular gutter to catch and carry off water falling upon the glass, nor in providing metal clips or stops, flexible in character, at the bottom of the box, to hold the glass in place when the case is set at an angle.

2. SAME.

There is no invention in making the legs or stays of a case used for the display of decorative art on graves out of wire inserted in tin ears, so as to work pivotally, instead of from any other metal, or hung with hinges, or to move up and down on a stationary rod, or other like known method, so as to make the legs capable of extension and contraction, or of being folded up.

3. SAME.

The Kraatz patent, No. 392,038, for an improved case for exhibiting decorative art at graves, is void for want of invention. 79 Fed. 322, reversed.

Appeal from the circuit court of the United States for the Eastern District of Missouri.

This was a suit in equity by Henry W. Kraatz and Theodore L. Kraatz against Fritz Tiemann for alleged infringement of a patent. The circuit court sustained the patent, found that it was infringed by defendant, and entered a decree for an injunction and an accounting. 79 Fed. 322. The defendant has appealed.

John W. Noble (F. & Ed. Gottschalk, on brief), for appellant.

Frederick A. Wind, for appellees.

Before SANBORN and THAYER, Circuit Judges, and PHILIPS, District Judge.

PHILIPS, District Judge. This is a bill in equity for the infringement of patent No. 392,038, issued October 30, 1888, with a prayer for damages and an injunction. The answer put in issue the patentability of the structure. It also denied that the complainant was the originator and first inventor, and alleged that the same had been anticipated in its construction and use by one August Stiefel. The answer also pleaded laches on the part of the complainant.

The claim is for "a new and useful improvement in case for exhibition of decorative art," described in the patent attached to the bill of complaint as a "receptacle or case having legs or stays, provided with circular, tubular channels about its open face, having slots throughout the length of the channels; also, bearing flange and clips or stops to receive the removable glass cover and hold it to the bearing flange,

said channels serving as troughs or ducts to carry off the water, and said bearing flange [serving] as a drip to protect the contents of the case from the weather." The object of the claimed invention, as stated in the patent, is for "the display of decorative art placed over graves, and protection of the same from the weather, so that wreaths, crosses, and emblems of any kind, made in various designs of porcelain, tin, cloth, etc., may be kept fresh and bright in their colors for an indefinite time; and our invention consists in providing a receptacle or case for said decorative art having a removable glass cover fitted to circular, tubular, and slotted channels, forming troughs for carrying off the water and condensing the same on the under side of the glass cover; further, in providing legs or stays to our receptacle or case, so that the same may be set on incline to better display the contents." This display box was constructed on the bottom and sides with tin, with a removable glass cover. The glass cover was confined in slots, or circular, tubular channels with bearing flange, and when the case was placed in position at the grave at an angle, so as to display the flowers, to prevent it from slipping down, there were metal clips or stops at the bottom of the box, flexible in nature, so that they could be bent down in sliding the glass in, and then bent back to secure the glass in position. The circular, tubular channels, or, plainly speaking, grooves on the side, were for carrying the water from the surface of the glass, and conducting it off to the sides, to prevent it from running inside the box. In order to hold the case in a half-inclined position, or at such angle as might be desired, the receptacle was provided with legs or stays, made of wire, inserted in loops of tin ears, pivoted to the upper side of the case, whereby the legs could be extended or folded up, either in placing or removing the receptacle.

The circuit court sustained the patent, and granted the injunction, and ordered an accounting. The case seems to have passed off in the trial court almost entirely upon the question as to the manufacture and use of such a device prior to the granting of the patent. So that there was no other consideration given to the question as to the patentability of the invention further than to say that the letters patent are prima facie evidence of novelty and utility, and that every reasonable doubt should be resolved in favor of the validity of the patent. The more serious question, in our judgment, is, was this tin case, with a removable glass face, constructed in such simple manner, for the use claimed, such invention as was contemplated by congress in the enactment of July 4, 1836? 5 Stat. 119, c. 357, § 6; Rev. St. 1878, § 4886.

The scope of letters patent must always be limited to the invention predicated in the claim, and this claim can never be enlarged by any language employed in other parts of the specification. Railroad Co. v. Mellon, 104 U. S. 112. The distinct claim specified in this instance is (1) the tubular channels, with bearing flange, serving to carry off the water; (2) the case with supporting legs, as stated in the specification; and (3) the clips to hold the glass in place when the case is in position at the grave. Where a claim is predicated upon an improvement, the bill and the proof must show in what the improvement

consists. Peterson v. Wooden, 3 McLean, 248, Fed. Cas. No. 11,038. We look in vain through this bill for any such distinctive averment. The application for patent and the specification distinctly admit that the applicants "are aware that receptacles or boxes for the purpose of exhibiting articles having removable glass covers were known or used before the date of our invention, and we therefore do not wish to claim, broadly, such in our construction." Obviously this was so, because, as the proof shows and common observation attests, such glass removable covers for admitting an unobstructed view of, while affording protection to, the contents of such a case, had long been in use by grocers for exhibiting fruits, candies, and other groceries usually kept in a retail store. Also, as is well known, had like removable glasses, long anterior to the grant of these letters patent, been in use in street lamps. It must further be conceded, in this connection, that the mode of inserting and removing the glasses used on store boxes and street lamps was much after the fashion of that employed in the case in question. They worked and were secured in slots or channels with over bearing flange to hold them in place.

The only invention, in this particular, therefore, possible to be claimed, is in so constructing the slots or grooves in which the glass moved that they might serve the double purpose of holding the glass in place while admitting the water, that might run from the surface of the glass to the sides, to pass off through the slots as a duct. Did this achievement rise to such a conception as to be dignified with the name of invention? What is an invention, within the meaning of the patent laws, is a question more easily to be answered by negation than by affirmation. While the courts have not been able to entirely harmonize on any exact scientific or arbitrary definition of this term in its practical application to all cases, it may safely be said that it is not mere novelty, "for the statute provides that things to be patented must be invented things, as well as new and useful things." Thompson v. Boisselier, 114 U. S. 11, 5 Sup. Ct. 1042; Gardner v. Herz, 118 U. S. 191, 6 Sup. Ct. 1027. All are agreed that there must be originality of conception, which springs spontaneously, and not "by a necessity of human reasoning in the minds of those who became acquainted with circumstances with which they had to deal." Walk. Pat. §§ 23, 24. It results logically from this idea that it is not invention to produce a device which a skilled mechanic, upon suggestion of what was required, would produce; especially so when he is aided in the work of construction by devices and appliances in practical use pregnant with suggestions of larger and better use. In this day of increasing demand for new and enlarged mechanical appliances, the first natural result is the production of a large class of skilled and experienced mechanics and artisans, and, second, a more studious and constant development in applied mechanics. And, as such advance plainly points out to the attentive and assiduous workman the natural, larger, practical adaptation of existing, known mechanical devices, to invest each one of these developments with the immunity of a monopolizing patent would not only be a perversion of the term "invention," but would utterly extinguish the doctrine of mechanical equivalents: It was of such distinction that Mr. Justice Bradley so

aptly and forcibly said, in Atlantic Works v. Brady, 107 U. S. 200, 2 Sup. Ct. 225:

."The design of the patent laws is to reward those who make some substantial discovery or invention, which adds to our knowledge and makes a step in advance in the useful arts. Such inventors are worthy of all favor. It was never the object of those laws to grant a monopoly for every trifling device, every shadow of a shade of an idea, which would naturally and spontaneously occur to any skilled mechanic or operator in the ordinary progress of manufactures. Such an indiscriminate creation of exclusive privileges tends rather to obstruct, than to stimulate, invention. It creates a class of speculative schemers, who make it their business to watch the advancing wave of improvement, and gather its foam in the form of patented monopolies, which enable them to lay a heavy tax upon the industry of the country, without contributing anything to the real advancement of the arts. It embarrasses the honest pursuit of business with fears and apprehensions of concealed liens and unknown liabilities to lawsuits and vexatious accountings for profits made in good faith."

The complainant concedes that, prior to his patent, he had seen glass cases, globular in form, used for containing and displaying artificial flowers and wreaths on graves in cemeteries. It was a mere matter of economy and durability to make the three sides of tin. And as like fashioned cases, in grocer boxes with glass faces, removable in slots or grooves, were in common use, as also in street lamps, there certainly was no originality of conception in applying the method to cases containing wreaths, flowers, etc., for use on graves. Neither was there any novelty in sliding the glass in slots or grooves, so as to secure the glass at the top and on the sides, with the lower side or bottom open to allow the removal of the glass. This was already manifest in the street lamp. Neither was there any originality of conception in employing the side grooves as a duct to carry the water off. This performed the simple and well-known office of a gutter conduit. To construct this conduit in a tubular form, with bearing flange, or in the form of a semicircle, so that the lower rim thereof should support the glass, while the concave of the gutter should catch any water that might pass between the outer edge of the glass and the tube, and conduct and discharge it at the lower end, were such simple functions, merely structural in character, as would ordinarily suggest themselves to the mind of any thinking, skilled mechanic. Was there any patentable novelty in employing the flexible clips at the bottom of the case to prevent the glass from sliding out when the case was set at the required angle? The necessity of some such support was obvious. Any simple device within the grasp of an ordinary mechanic would subserve the same purpose. To the tinner commissioned to construct such case for the use designed, the placing of a clip made of tin, easily bent back and forth, or any like pliable metal, would have been as natural as it was simple.

The only remaining claim in this patent is that of the legs or stays. Such supporting feet were visible in the easel, or house stepladder, and other like structures. "It is not invention to improve a known structure by substituting an equivalent for either of its parts." Walk. Pat. § 36. To make these legs or stays out of wire, inserted in tin ears, so as to work pivotally, instead of being made of any other metal, or hung with hinges, or to move up and down on a stationary rod, or other like known method, so as to make the legs capa-

ble of extension and contraction, and to be folded up, is not seriously claimed, we take it, to possess the merit of a patentable novelty. We may aptly apply to the last two claims the language of Mr. Justice Clifford, in Machine Co. v. Murphy, 97 U. S. 125:

"Except where form is of the essence of the invention, it has but little weight in the decision of such an issue; the correct rule being that, in determining the question of infringement, the court or jury, as the case may be, are not to judge about similarities or differences by the names of things, but are to look at the machines or their several devices or elements in the light of what they do, or what office or function they perform, and how they perform it, and to find that one thing is substantially the same as another, if it performs substantially the same function in substantially the same way to obtain the same result, always bearing in mind that devices in a patented machine are different, in the sense of the patent law, when they perform different functions or in a different way, or produce substantially a different result."

That other mechanics and tinners should have testified to making the equivalent of such case prior to the grant of this patent, unaided save by their observation that the box was used by grocers and on street lamps, should arouse little incredulity. Our conclusion is that the patent in question is void for want of patentable novelty. The decree of the circuit court is therefore reversed, and the cause is remanded, with directions to dissolve the injunction and dismiss the bill, at the cost of complainants.