VOIGHTMANN et al. v. WEIS & RIDGE CORNICE CO. et al.

(Circuit Court, W. D. Missouri, W. D.    September 17, 1904.)

No. 2,520.

1. PATENTS—SUIT FOR INFRINGEMENT—EFFECT OF PRIOR DECISIONS.

When, on a state of proofs less favorable to the defendants, one court has held a patent invalid on the grounds that there is a lack of invention and that the devices employed are only aggregations, the rule or sentiment of comity will forbid another court from a different conclusion, unless it feels compelled thereto by a positive sense of duty.

2. SAME—INVENTION.

It being old to glaze fixed metal sash with wire glass and to use fusible links in places where any weight, such as a door, a valve, wires, shutters, or any other thing is to be kept suspended, until, on the breaking out of a fire, the same is closed by the action of heat, there was no invention in so glazing a pivoted sash, nor in using a fusible link to hold in an open position an automatically closing sash, more especially when it was old to hold such a sash open by means of a cord described in the patent to be the equivalent of a fusible link.

3. SAME—EXTENDED APPLICATION OF OLD IDEA.

The mere carrying forward or extended application of an old idea or thought is not invention, even though it results in improvement in degree.

4. SAME—NOVELTY—COMBINATION OF OLD ELEMENTS.

It is not the law that the asserted novelty of a patented combination can only be overcome by showing that all of the elements have previously been employed as a unit in the same relation to each other.

5. SAME—GENERAL USE AS EVIDENCE OF INVENTION.

No extent of use of a patented article can supply the want of actual invention or cure the vice of mere aggregation of parts.

6. SAME—FIREPROOF WINDOWS.

The Voightmann patent, No. 600,186, for an improvement in fireproof windows, claims 5, 6, and 7, are void for lack of invention, and also as being for mere aggregations.

In Equity.    Suit for infringement of letters patent No. 600,186, for improvements in fireproof windows, granted to Frank Voightmann March 8, 1898.    On final hearing.

Offield, Towle & Linthicum, for complainants.
Elliott & Hopkins, for defendants.

PHILIPS, District Judge.    This is a suit instituted by the complainants against the defendants for the infringement of letters patent No. 600,186, granted to said Voightmann March 8, 1898, for an alleged improvement in fireproof windows.    The said Pomeroy is joined as co-complainant as assignee of an undivided interest in the patent.    The object of the bill is to enjoin the defendants from infringing claims 5, 6, and 7 of the patent, which read as follows:

"(5) In a fireproof window, the herein described automatically closing sash consisting of the combination of the fireproof casing, A, the fireproof sash, L, pivoted therein, the destructible retaining device, M, N, by which said sash is held open; all substantially as shown and described.

"(6) In a fireproof window, the herein described automatically closing sash, consisting of the combination of the fireproof casing, A, the fireproof sash, L,

pivoted therein, the retaining chain, M, having the fusible link, N, therein; all substantially as shown and described.

"(7) In a fireproof window, the herein described automatically closing sash, consisting of the combination of the fireproof casing, A, the fireproof sash, L, pivoted therein at a pivot, P, above its middle, the retaining chain, M, having the fusible link, N, therein at a point opposite the opening; all substantially as shown and described."

In briefer form, they involve a fireproof casing, a fireproof sash pivoted in the frame, so as to automatically close itself when released, and a destructible retaining device with a fusible link. The validity of this patent was recently passed upon by Judge Kohlsaat in the United States Circuit Court for the Northern District of Illinois in the case of Voightman et al. v. Perkinson et al., 133 Fed. 934. On a state of proofs less favorable to the defendants than in the record before me, he held the patent to be bad, on the grounds that there was a lack of invention by the patentee, and that the devices employed are only aggregations. The rule, or rather the sentiment, of comity would forbid a different conclusion by this court, unless it felt constrained thereto by a positive sense of duty. Out of respect for the earnest and able contention by complainants' counsel for a different ruling, I have given the questions involved the best consideration the limited time at my command permits. As the case passed upon by Judge Kohlsaat has already been appealed from, the like course will doubtless follow from any conclusion I may reach in the premises.

Much stress was laid in argument, by one of complainants' counsel, on the employment of wire glass in the window sash, as a part of the combination device. The importance attributed to this in performing the double office of transmitting light and resisting heat it may be conceded greatly augments the value of the use of the window in question. But an examination of the claims 5, 6, and 7, on which the bill is predicated, and the evidence, clearly demonstrate that the complainants' claim for relief cannot stand upon this argument. In the first place, while the invention is stated to consist "broadly of a window having a sheet-metal casing with clenched joints at its corners and elsewhere, which require no solder, and a fireproof glass set into the sash with metallic fastenings, one of the sash being hinged and held open by a retaining device which will be severed by the heat of a fire," the only reference to wire glass is at pages from 87 to 93 under the head "Further Details"; but this is followed by the statement, "But other glass or different material may, of course, be used, if capable of resisting heat." And when it comes to what the applicant for a patent claims in 5, 6, and 7 of the specifications, the term "wire glass" does not appear. And the complainants' star expert witness, in the last analysis of his testimony, frankly stated that the claim could not rest upon the fact of the employment of wire glass, the reason for which is obvious enough. The evidence shows quite satisfactorily that the product of wire glass had been discovered more than 17 years prior to the application for the patent in suit, and that long prior thereto it had been used in skylights and windows. Every quality, practically, attributed to it in argument, was

well known to the art and use years anterior to the complainants' employment of it. Therefore Voightmann could lay no claim to it as a novelty in the art discovered by him. He was well advised, no doubt, that, if he had laid claim to its use as a distinctive element in his combination, it would have been fatal to the validity of his patent, as being merely an aggregation of known devices.

As said by Judge Coxe in Clark Pomace-Holder Co. v. Ferguson (C. C.) 17 Fed. 79:

"If the elements of the combination act independently of each other, or if one element acts independently of the others, it is an aggregation of parts, and not entitled to protection as a combination."

This rule was expressed in Hailes v. Van Wormer, 7 Blatchf. 443, Fed. Cas. No. 5,904, as follows:

"The mere addition of an old device producing a specific result to another old device producing its own result in such wise that their combination produces the same two results, and no other, is not invention."

In Hailes v. Van Wormer, 20 Wall. 353, 368, 22 L. Ed. 241, Mr. Justice Strong said:

"All the devices of which the alleged combination is made are confessedly old. No claim is made for any one of them singly as an independent invention. It must be conceded that a new combination, if it produces new and useful results, is patentable, though all the constituents of the combination were well known and in common use before the combination was made. But the results must be a product of the combination, and not a mere aggregate of several results, each the complete product of one of the combined elements. Combined results are not necessarily a novel result, nor are they an old result obtained in a new and improved manner. Merely bringing old devices into juxtaposition, and there allowing each to work out its own effect, without the production of something novel, is not invention."

And in Pickering v. McCullough, 104 U. S. 310, 318, 26 L. Ed. 749, Mr. Justice Matthews said:

"In Nimmo's apparatus, it is perfectly clear that all the elements of the combination are old, and that each operated only in the old way. Beyond the separate and well-known results produced by them severally, no one of them contributes to the combined result any new feature; no one of them adds to the combination anything more than its separate independent effect; no one of them gives any additional efficiency to the others, or changes in any way the mode or result of its action. In a patentable combination of old elements all the constituents must so enter into it as that each qualifies every other. To draw an illustration from another branch of the law, they must be joint tenants of the domain of the invention, seised each of every part, per my et per tout, and not mere tenants in common, with separate interests and estates. It must form either a new machine of a distinct character and function, or produce a result due to the joint and co-operating action of all the elements, and which is not the mere adding together of separate contributions; otherwise it is only a mechanical juxtaposition, and not a vital union."

Indisputably wire glass performs the same function in admitting light and resisting heat, and produces the same result, whether it be placed in a stationary sash or one working on a pivot, or whether it be in a metal or a wooden sash, or whether the sash itself be in a wooden, unriveted frame, or in a metal, riveted frame. In short, the wire glass produces its own results, independent either of the mechanical juxtaposition of the window sash or frame or being

operated in a sash fixed in its place or on a pivot, whether the sash and frame be metallic or wooden. A claim, therefore, based upon the employment of wire glass, would clearly come within the definition of an aggregation of mechanical devices fatal to the patent.

The same objection, it seems to me, lies against the claim predicated of the employment of "the retaining chain having the fusible link." It is not claimed that Voightmann invented this device. And, if it had been, the evidence, without contradiction, shows its anterior use, and patents granted to others. The retaining wire or chain, with fusible link, attached to the model of window in evidence, admitted to be correct, bears a stamp on the link: "F. G. Grinnell. Patented May 15, 1883." The Grinnell patent in evidence describes the device as being "used in places where a trust stop is required to sustain anything that is to be released by the action of heat in case of a fire. The spliced link * * * is used in places where any weight, such as door, a valve, wires, shutters, or any other thing is to be kept suspended until on the breaking out of a fire the same is to be released. * * * C, c, are two links of any desired length, spliced together by a beveled splice and held in place by the sleeve, b, made in two parts, and united by a solder fusible at a low temperature, so that by the fusion of the solder the strain on the links, c, c, will rupture the soldered joint and release the links." The Knight patent, in evidence, for improvements in fireproof shutters, describes a fusible strap, so applied to a shutter that, when melted by heat, the shutter will close automatically. The Briggs patent, in evidence, describes and exhibits a skylight shutter which closes automatically by gravity by the melting of a fusible link; and also, through the melting of this fusible link, turns on water at one side thereof, which is described as follows in the patent:

"In case of fire the temperature is raised sufficiently to cause the melting of the fusible wire, B, at that part nearest to the fire, so that the wire will part, and the shutter be closed by the action of the weights. * * * In place of weights by which the automatic closing of the shutter is produced, springs or other equivalent may be employed."

And in the Moody patent, granted in 1896, for a fusible joint, almost the chain and fusible link of complainants' patent is described.

The evidence shows that George Hayes, an inventor of wide celebrity, had employed the mechanical equivalents of the fusible link appliance more than two years prior to its use by complainants in window lights. The fact that he and others used ropes or strings, sometimes kept saturated with coal oil to more easily ignite in case of fire, so as to let the window close, just as in the claim of the complainants, certainly could not entitle the latter to claim any invention for a mere substitute of wire with fusible link, already invented and in use. Such a substitute was purely mechanical, such as would occur to any ordinary mechanic.

How does the fusible link device, in the releasing cord, affect or control the automatic closing of the window sash? When released by hand, or by the burning of a cord, or anything else, the pivoted,

suspended window would close automatically, the same as when held open and released by a fusible link chain. This being so, it must follow that the office performed and result produced by the given sash is not affected or controlled by the use of the fusible link chain. In fact, the application for this patent concedes that the fusible link device is not claimed as prescriptive. After expressing a preference therefor, it says: "But in place of this link any other destructible connection which is inflammable or readily destroyed by heat or fire may be used." This is a concession that there is no claimed essential combination to the result sought between the use of the fusible link chain and "any other destructible connection which is inflammable or readily destroyed by heat or fire." So that, if these defendants had employed on their window a tow string or rope saturated with coal oil, instead of a wire with fusible link, it would in no degree have lessened complainants' right to assert an infringement. It seems to me that in its last analysis the claim resolves itself into this: that it must be sustained, if at all, upon the ground that Voightmann was first in the field of employing the fire window frame as described, and sash working on a pivot, retained by a cord, in open position, so as to close automatically by the releasing cord taking fire.

Without discussing other prior devices, such as skylights over theaters, as in Milwaukee, an examination of the automatic closing window before me (defendants' exhibit of the Heussler-Cluss windows, 1892, fireproof window frame and sash; used as skylight window, frame, and sash in St. Louis, Mo.) satisfies my mind that it required no patentable invention on the part of Voightmann to construct his device. The said window frame and sash are of sheet metal, with lapped, riveted joints, and a sash pivoted so as to close by the natural force of gravity, practically in the same manner as that claimed by complainants. A large number of these windows were in use long prior to complainants' patent, and are now in use in the St. Louis building. The sash is pivoted above the center, so as to close automatically when the cord holding it open is released, and when closed it is held, just as complainants', by a spring latch. The window is held open by a small cord, extending from the top of the sash at the middle of its length downwardly at a point opposite the opening, just as specified in claim 7 of complainants' patent. The sash is glazed with heavy skylight glass, making it a fireproof window as effectually as that of the complainants. This glass, it is true, is not so translucent as the wire glass; but of this the complainants cannot base a contention, for, as already demonstrated, the patentee in neither of his claims desired to be secured limited them to a prescribed wire glass; "but other glass of different material may, of course, be used, if capable of resisting heat." All that Voightmann had to do in devising his combination was to sit before this Heussler-Cluss window, and copy it, with some mechanical changes, and substitute for the grass rope one with a fusible link, which had long been in use in performing in mechanical arts a similar function. So that in point of fact Voightmann made what is termed "a mere extended application

of an old idea," which was only an improvement in degree, a sub-
stitution of mechanical equivalents. Therefore, unless the law is
that such asserted novelty can only be avoided by the defendants
by showing that all of the claimed elements had hitherto been em-
ployed as a unit in the same relation to each other, the case is with
the defendants. I do not understand such to be the law. It has
been repeatedly asserted and maintained by the courts that the
mere carrying forward or a mere extended application of the orig-
inal thought is not invention, even though it results in improvement
in degree. Consolidated Roller-Mills v. Walker, 138 U. S. 124, 11
Sup. Ct. 292, 34 L. Ed. 920; Wright v. Yuengling, 155 U. S. 47, 15
Sup. Ct. 1, 39 L. Ed. 64. In Kelly v. Clow, 89 Fed. 297, 303, 32
C. C. A. 211, 60 U. S. App. 338, the court, quite appositely to this
issue, said:

"Similar combinations are found in many prior patents, but all of the ele-
ments found in complainants' combination are shown not to have been used
together in any one of the prior patents in the same relation to each other.
It is insisted that the novelty of the combination can only be destroyed by
showing that all of its elements have been used together before, and in the
same relation to each other. The contrary is well established." See loc. cit.

We may well conclude this branch of the discussion with what
was said by the Court of Appeals of this Circuit in Tiemann v.
Kraatz et al., 85 Fed. 437, 29 C. C. A. 257, 56 U. S. App. 545, in
which it was held that "it is not invention to improve a known
structure by substituting an equivalent for either of its parts."
The writer of the opinion observed:

"What is an invention, within the meaning of the patent laws, is a ques-
tion more easily to be answered by negation than by affirmation. While the
courts have not been able to entirely harmonize on any exact scientific or
arbitrary definition of this term in its practical application to all cases, it
may safely be said that it is not mere novelty, 'for the statute provides that
things to be patented must be invented things, as well as new and useful
things.' Thompson v. Boisselier, 114 U. S. 11, 5 Sup. Ct. 1042, 29 L. Ed. 76;
Gardner v. Herz, 118 U. S. 191, 6 Sup. Ct. 1027, 30 L. Ed. 158. All are agreed
that there must be originality of conception, which springs spontaneously,
and not 'by a necessity of human reasoning in the minds of those who became
acquainted with circumstances with which they had to deal.' Walk. Pat.
Pers. 23, 24. It results logically from this idea that it is not invention to
produce a device which a skilled mechanic, upon suggestion of what was re-
quired, would produce; especially so when he is aided in the work of con-
struction by devices and appliances in practical use pregnant with suggestions
of larger and better use. In this day of increasing demand for new and en-
larged mechanical appliances, the first natural result is the production of a
large class of skilled and experienced mechanics and artisans, and, second,
a more studious and constant development in applied mechanics. And, as
such advance plainly points out to the attentive and assiduous workman the
natural, larger, practical adaptation of existing, known mechanical devices,
to invest each one of these developments with the immunity of a monopoliz-
ing patent would not only be a perversion of the term 'invention,' but would
utterly extinguish the doctrine of mechanical equivalents."

While it is to be conceded to the complainants that the evidence
taken on their part shows extensive use of their window with the
wire glass, that it is largely favored by underwriters in fire insur-
ance, this use is by no means conclusive evidence of invention.
No extent of use can supply the want of actual invention or cure.

the vice of mere aggregation. Adams v. Bellaire Stamping Company, 141 U. S. 539, 12 Sup. Ct. 66, 35 L. Ed. 849; Lehigh Valley R. Co. v. Kearney, 158 U. S. 461, 15 Sup. Ct. 871, 39 L. Ed. 1055; Olin v. Timkin, 155 U. S. 141, 15 Sup. Ct. 49, 39 L. Ed. 100; Grant v. Walter, 148 U. S. 547, 13 Sup. Ct. 699, 37 L. Ed. 552. This is well summed up by Mr. Justice Brown in McClain v. Ortmayer, 141 U. S. 420, 12 Sup. Ct. 79, 35 L. Ed. 800:

"While this court has held in a number of cases that in a doubtful case the fact that a patented article has gone into general use is evidence of its utility, it is not conclusive even of that; much less of its patentable novelty."

Further on the learned justice said:

"That the extent to which a patented device has gone into use is an unsafe criterion even of its actual utility is evident from the fact that the general introduction of manufactured articles is as often effected by extensive and ju-dicious advertising, activity in putting the goods upon the market, and large commissions to dealers as by the intrinsic merit of the articles themselves. The popularity of a proprietary medicine, for instance, would be an unsafe criterion of its real value, since it is a notorious fact that the extent to which such preparations are sold is very largely dependent upon the liberality with which they are advertised and the attractive manner in which they are put up and exposed to the eye of the purchaser. If the generality of sales were made the test of patentability, it would result that a person by securing a patent upon some trifling variation from previously known methods might by energy in pushing sales, or by superiority in finishing or decorating his goods, drive competitors out of the market, and secure a practical monopoly, with-out in fact having made the slightest contribution of value to the useful arts."

It results that the bill of complaint should be dismissed.