**NORTHERN TRAILER CO. et al. v. LA PLANT et al.**

Circuit Court of Appeals, Eighth Circuit.
September 16, 1927.

No. 7722.

Patents ⚙⇒328—1,550,573, claims 4–7, 10, for snowplow with caterpillar tractor substituted for horses, held invalid for lack of invention.

The Sargent patent, No. 1,550,573, claims 4, 5, 6, 7, and 10, for snowplow similar to those in prior use, except that a caterpillar tractor is substituted for horses as motive power, held invalid for lack of invention.

Appeal from the District Court of the United States for the Northern District of Iowa; George C. Scott, Judge.

Suit in equity by the Northern Trailer Company and the Union Iron Works, Inc., against Edward W. La Plant and Leroy F. Choate, doing business as the La Plant-Choate Manufacturing Company. Decree for defendants, and complainants appeal. Affirmed.

George E. Middleton and W. B. Morton, both of New York City (Pennie, Davis, Marvin & Edmonds, of New York City, and Ralph Orwig, of Des Moines, Iowa, on the brief), for appellants.

John B. Macauley, of Chicago, Ill. (John M. Grimm, of Cedar Rapids, Iowa, on the brief), for appellees.

Before KENYON, Circuit Judge, and MOLYNEAUX and JOHN B. SANBORN, District Judges.

MOLYNEAUX, District Judge. The lower court held that appellants' device does not embody patentable invention, and that, upon the assumption of the validity of the claims of said patent, the evidence does not show the same to have been infringed by the appellees' structure.

In our view, as in that of the learned trial judge, appellants' patent No. 1,550,573, when considered in the light of the prior art, does not embody patentable invention.

Appellants' snowplow, of which Mr. Sargent was the inventor, and also appellees' snowplow, were developed shortly after the World War, independently of each other, and in widely separated parts of the United States, at a time when the caterpillar tractor had recently been brought into prominence and general notice by the World War.

The advent of the caterpillar tractor undoubtedly furnished the inspiration to the originators of both the devices in controversy here. Its usefulness and applicability as a heavy duty motor power had attracted wide attention by reason of its employment by the armies engaged in the World War.

The Sargent patent claims, infringement of which is charged, are claims 4, 5, 6, 7, and 10. Claims 4, 6, and 10 are typical:

"(4) A snowplow comprising the combination of a nose, a rearwardly extending frame secured thereto, and designed to receive a tractor, runners supporting the frame, and uprights near the forward end of the frame designed to contact with chafing blocks on the sides of the tractor."

"(6) A snowplow comprising the combination of a nose, a rearwardly extending frame secured thereto, and designed to receive a tractor of the traction belt type, a drawbar at the rear of the frame, a flexible draft connected between the drawbar and the tractor, and means near the forward end of the frame designed to make contact with the tractor at turns."

"(10) A snowplow comprising the combination of a snow-removing element, a frame connected thereto designed to receive a tractor, runners supporting the frame, and flexible connections between the tractor and the tractor holding the rear end and sides of the tractor out of contact with the frame while permitting the tractor to turn the plow through power applied near the forward end of the frame."

Each and all of the elements of Sargent's device are concededly old. Appellants' contention is that it comprises a new combination of old elements, resulting in a new and useful result. Appellants' device is composed of a nose, the plow proper, secured to a

rearwardly extending frame designed to receive a tractor, which surrounds the tractor when the latter is in position; the tractor being hitched to the rearward bar of the frame by a flexible draft connection between the drawbar and the tractor. Chafing blocks at the front end of the frame are provided to make contact with the tractor at turns. The frame is supported by a sled. This arrangement, of course, results in the plow moving independently and out of sympathy with the tractor and on its own bottom, and thus does not follow every movement of the tractor. The tractor thus following the plow moves on a smoother path than it otherwise would, the snow having been removed by the nose of the plow. This fact, together with the flexible connection, to a large extent obviates the strain on the structure which would be imposed if the plow were rigidly connected with the tractor. The plow structure thus framed around the tractor is guided by it. The plow must perforce turn with the tractor. The tractor is turned by stopping the traction belt on the side towards which the turn is to be made.

In appellants' structure, chafing blocks are placed on the sides of the tractor at the forward end and corresponding blocks are placed on the frame, and the frame is rigidly constructed, so that, when the tractor turns, the chafing blocks upon the tractor come in contact with those upon the frame, thus enabling the tractor to turn the structure without damaging it.

The sled or main supporting runners on which the plow proceeds are connected at their front ends by the forward frame. The sides of the plow are connected to the runners by a link at the rear of the runners and back of the runners. The sides are provided with a short runner section; the construction being such that the frame may be raised or lowered at its forward end to adjust the clearance of the nose of the plow above the ground. The nose of the plow proper is attached to the main side members of the frame by suitable plates and angles, so as to be raised or lowered with the side plates. For raising and lowering the side plates, levers are provided which are fulcrumed on the uprights of the forward frame and pivoted at their front ends to the side frames so that, when the levers are pressed down at their rear ends, the forward ends of the side frame and the nose of the plow will be lifted with respect to the runners. The rear ends of the levers project between the parallel uprights of the rear frame and are held in the designated position by cross pins adapted to be inserted in the series of holes provided in the uprights for that purpose. The plow is provided with side wings to push back the snow from the sides of the plow to widen the cut. The claims in suit are not concerned with the wing construction, which was the subject of appellees' counterclaim.

The two main side frames are connected at their rear ends by an adjustable crossbar, which is held in position by a movable pin so that either end of the crossbar may be swung back to permit the tractor to be driven into its place between the side frames. After the tractor is in place, the crossbar is fastened in place, and the tractor is hitched to it by a flexible connection. At its forward end the side channels of the tractor are provided with horizontally extending chafing blocks, whose metal faces extend laterally beyond the edge of traction belt in a position to engage the vertical chafing blocks or rub irons fastened to the face of the uprights of the forward frame, whereon the thrust of the tractor to right or left will be received and the plow will be steered to the right or left as may be desired; the tractor being loosely inclosed in the frame, there being an inch or so between the frame and the tractor, and connected to the rear drawbar by a flexible connection, the plow as before stated, does not move up and down or act in sympathy with every movement of the tractor. The nose of the plow cuts a path through the snow and the wings throw it back, leaving an open path as wide as the plow and with sloping sides so that the snow will not roll back into the path. Sargent contends that he contributed to the art "a roadway tractor snowplow, free of the tractor, yet drawn and steered by it in such manner that the plow and tractor operated as a unit, but without the disadvantages inherent in the tractor supported plow of the prior art."

This claim is stated in the patent as follows:

"In the cities and towns of the North, where every winter brings heavy snows, the problem of keeping the streets and roadways clear is vital. In accordance with the present invention, I have designed a snowplow which very satisfactorily solves this problem. My plow is provided with an angular nose, to which is secured a rearwardly extending frame supported upon runners, and designed to receive a tractor, preferably one of the caterpillar or traction belt type. The draft connection or connections between the tractor and the plow frame are flexible, so that

the plow, although preceding the tractor, is in reality being pulled by it. It is very important that the draft connections be made loose. With rigid connections, the pitching and rolling motion of the tractor is imparted to the plow, which not only strains the parts, but results in an uneven path. A loose connection obviates these objections and also makes it possible to turn the plow through sidewise pushing or pulling by the tractor applied directly near the forward end of the plow."

"The drawbar is provided at its center with a shackle 15, which makes a loose connection with the tail 16 of the tractor. The tractive power of the tractor is thus applied to the plow and its frame along the center line, and, being applied at the rear, the nose is free to ride up and down a sufficient amount to insure easy operation without loss of control. In order to prevent undesirable side play while still retaining the flexibility so important for the successful operation of the plow, the drawbar is provided with two chains 17, which are connected at their forward ends with a draft equalizer 18 pivotally mounted on the tail of the tractor. The draft connection between the tractor and the plow, although permitting ample freedom of motion, is sufficiently rigid to insure proper forward motion of the plow at all times.

"The turning of the plow is effected through the forward uprights 8 on the sled and the chafing blocks 11 on the tractor. There is sufficient play between the parts so that when the tractor is operated to turn, say to the right, the right-hand chafing block contacts with the right-hand uprights 8, and simply pushes the plow around."

In the horse-propelled snowplows prior to the advent of the tractor, the plow with a rearward extending frame inclosing horses, was hitched to the horses by doubletree and swingletree attached to the rear bar of the frame, giving the flexible hitch. Two examples of horse-drawn plows, in which the nose is carried by the rearwardly extending frame which receives the horses as the motive means, are shown in patents 1,006,307, issued October 17, 1911, J. Spahn, inventor, and patent 925,717 (1909), McFarland, inventor.

These patents were not before the examiner in passing upon the Sargent application for patent. Each of these patent shows a snowplow comprising the combination of a nose or plow proper, a rearwardly extending frame secured thereto and designed to receive a horse or horses, a drawbar at the rear of the frame, a flexible draft connection between the drawbar and the horses; the draft connection being the usual doubletree and swingletree where there are two horses. In each of these also the plow was guided at least partially by means of the weight of the horses being turned to right or left against the frame inclosure. In each of these instances the rearwardly extending frame supporting the nose was supported and proceeded upon runners attached to the frame. In the Spahn structure, provision is made for the use of six horses. The rear bar of the frame is removable to permit the team of horses to be driven into the frame. The rear bar is closed and locked, and the horses are hitched to it by the usual hitch employed in horse-drawn vehicles, namely, where two horses are employed, the usual doubletrees and swingletrees, the frame being attached to the rear bar. The team-receiving inclosure is divided into one or two shafts, accordingly as two or three horses are employed, to provide separate spaces for the horses; the ends of the shafts being secured in the front and rear bars of the frame respectively.

It is stated in Spahn's patent record:

"When the shafts are thus inserted into the forward and rear crosspieces 26 and 18, the crosspiece 18 is set down into the depression 17 (Fig. 11) and secured by the pins 19 which provide a strong, rigid construction and three horses are accommodated in the spaces 27, 28, and 29, as shown in Figs. 1 and 3."

This construction would allow the plow to be guided to the right or left by the thrust of the horses being guided to the right or left and throwing their weight against the shafts and sidewalls of the frame, and manifestly this was the way by which the plow was to be guided. There was provided a supplemental guiding means in a steering point, which would assist in directing the plow where assistance was necessary. But it is designed that the rudder be locked when the plow is in action. Provision is made for locking it in either of three positions, in the center or either side, but it is clearly intended that during the actual working the point shall be locked, and it was manifestly the intention of the inventor that the main turning and guiding of the plow should be done by the horses, although to some extent they would be assisted by the steering point.

It is obvious that whatever the rudder to this plow might contribute, it could have been dispensed with if a caterpillar tractor were substituted for the horses in the frame.

The McFarland snowplow is a similar structure, designed to be propelled by a single horse. It comprises a rectangular frame, having side members and a rear bar, which is pivoted so that it can be swung aside to admit the horse. The side members are provided with runners, and the plow nose is carried on arms pivoted to the side members of the frame. A rack and pinion construction is mounted on the front of the frame to adjust the arms carrying the plow. The horse is hitched to the rear cross member of the plow by the usual swingletree. The rear structure carrying the rear runners may be turned to guide the plow. It is obvious that the plow could be steered in the usual way in steering horse-drawn vehicles, provided with shafts by turning the horse with reins.

Here the structure is provided with steering means at the rear. It is manifest that this would not be necessary provided a tractor were used in place of the horses.

The McFarland and Spahn plows function in exactly the same way that the Sargent plow functions. Manifestly either of them would be improved by using a tractor instead of a horse to propel them. The evidence discloses that both the McFarland and Spahn plows could be operated by mechanical tractors in the same way that Sargent's plow operates, without substantial change. Mr. St. John, an expert witness for the appellees, testified, referring to the McFarland patent:

"It would, of course, be entirely possible to substitute a tractor for a horse in this plow, driving the tractor in between the side members of the plow, as shown in Fig. 9, and, in case of a horsedriven plow, the force of the horse's body moving sideways would be sufficient to guide the plow to left or right."

Referring to the Spahn plow, he said:

"In this case, as in the case of the McFarland device, and more especially in this case, where the side boards of the plow are high enough, the shoulders and hips of a horse could make contact with the side frame and move this plow to the right or left with or without the assistance of the pilot in front. It would also admit of a tractor of the Best type above referred to, co-operating with these side boards, with or without any interposed rub plate."

Sargent has merely substituted a tractor for a horse, without any but minor changes in the plow and without any change in the tractor. As the tractor belts with their serrated edges project laterally beyond the sides of the tractor body, they would rub against the frame of the plow. To prevent this, Sargent has provided spacing blocks or rub irons to project beyond the traction belts and engage the plow frame. This provision was obviously necessary and would occur to any competent mechanic in substituting a tractor in the place of the horse. The flexible hitch is present and in both the Spahn and McFarland structure. It is obvious that, since the plow and the tractor independently rest upon the roadway, there should be a flexible connection, and it is perfectly obvious that a rigid connection between the tractor and the plow would be unworkable, and no one would think of making such a connection. The evidence shows that it is common practice to flexibly connect tractors to vehicles and other mechanism propelled by them. Sargent employs the usual link and clevis for this connection. The provision of means near the forward end of the frame designed to make contact with the tractor was also an obvious necessity which any one would have observed. It is manifest and shown by the evidence that it would not require any special construction of the frame for this purpose.

We do not believe that there was any invention in putting contact blocks on the tractor to form contact with the plow frame. The testimony shows that such wear plates and spacing blocks are common in the various arts. The evidence discloses that Sargent was not the first to employ the tractor in connection with a snowplow, but, even had he been so, it would not have entitled him to a monopoly of such use. The tractor is a draft device far more powerful than a horse, and was available in the industrial art only a short while before its adaptability was seen and appreciated, and it was put to use in many ways upon the farm, upon the road, and otherwise. It was inevitable that it would be applied to this use as well as to the many other similar uses to which it has been put. Its advantage as a motive means is no different in the snowplow than in its many other applications. The credit is to be given to its inventor for its advantages in this respect and not to those who may first put it to an application for which it is obviously intended, or to which it is obviously adaptable.

Sargent is no more entitled to a monopoly on its use in connection with the snowplow than are the others who have taken advantage of its obvious adaptability to apply it to the many uses in which it is now employed. To permit Sargent to take advantage of the genius of the inventor of the caterpillar tractor and monopolize one of its obvious uses would be to rob the inventor.

21 F.(2d)—44

"It is not invention to produce a device which a skilled mechanic, upon suggestion of what was required, would produce; especially so when he is aided in the work of construction by devices and appliances in practical use pregnant with suggestions of larger and better use." Tiemann v. Kraatz (C. C. A.) 85 F. 437, 439.

Sargent has undoubtedly improved, as did the appellees, upon the old devices, by inserting therein the tractor, but that was suggested by the devices and appliances then in practical use.

Decree affirmed.