## PEARCE *v.* MULFORD.

1. To entitle an improvement to protection under the patent laws, it must be the product of the exercise of the inventive faculties, and involve something beyond what is obvious to persons skilled in the art to which it relates.
2. Reissued letters-patent No. 5774, granted Feb. 24, 1874, to "Shubael Cottle, assignor to Mulford, Hale, & Cottle," for an improvement in chains and chain links for necklaces, &c., are void, the first claim for want of patentability in the alleged invention, and the second for want of novelty.
3. *Quære,* whether said first claim is not also void for want of novelty.

APPEAL from the Circuit Court of the United States for the Southern District of New York.

This is a suit by Lewis J. Mulford, Seth. W. Hale, Shubael Cottle, and Samuel P. Baker, doing business under the firm

name of Mulford, Hale, & Cottle, against Thomas D. Pearce. The complainants' bill prays for an injunction to restrain his infringement of reissued letters-patent No. 5774, granted to the complainants as assignees of Shubael Cottle, Feb. 24, 1874, for an alleged new and useful improvement in chains and chain links for necklaces, &c., upon the surrender of original letters No. 147,045, granted Feb. 3, 1874. The bill also prays for an account of profits and damages. The defendant's answer admits the manufacture and sale of the chains made in the mode described in the letters, but denies the novelty and patentability of the alleged invention.

The specification forming a part of said reissued letters, together with the drawings therein referred to, is as follows : —

"Be it known that I, Shubael Cottle, of the city, county, and State of New York, have invented a new and useful improvement in chains for necklaces, &c.; and I do hereby declare that the following is a full, clear, and exact description of the same, reference being had to the accompanying drawing, forming a part of this specification, in which — .

"Figure 1 is a side view of a portion of a chain necklace illustrating my invention. Fig. 2 is a view of the same turned one-quarter around. Fig. 3 is a cross-section of the same, taken through the line *x x*, Fig. 1.

"My invention has for its object to furnish an improved chain for necklaces, &c., having links of peculiar construction, which enable all the links to be finished separate, and then put together to form the chain. The invention consists in an ornamental chain whereof the links are connected together by open spiral links B finished before being connected together, the connection being made by springing the finished links into each other in the manner described.

"I will now describe the chain represented in the drawing to illustrate my invention.

"A and B represent the links of the chain. The links A are round and closed, as shown in Fig. 1, and are made and polished or colored separately from the other links. The links B, which constitute the peculiar feature of my invention, are formed of one or more coils of tubing of the proper length, so as to form a double spring-link. Into each end of the tube forming the link B is soldered a small shot, as shown in the drawing, which shot gives a finish to the link. The links B may then be colored or polished,

and the chain is formed by springing the links into each other. The links A B may be made the one kind round and the other oval, or both may be made round, or both oval.

"The first construction is preferred, as producing a more elegant chain. Either kind of the links A B may be polished and the other colored, or both may be polished or both colored; but I prefer to polish the closed links and color the open spiral links, as producing a more pleasing effect. By this construction the links may be made and finished in quantities, and the chain formed from the finished links by springing them into each other to produce any desired combination of the links of the same or different kinds. Finishing the separate links in this way enables them to be more perfectly polished or colored, and with a greatly diminished expenditure of labor and time, and enables the links to be put together without injuring them in the least, however highly they may be polished or colored.

"Having thus described my invention, what I claim is —

"1. An ornamental chain for necklaces, &c., formed of alternate closed links A and open spiral links B, substantially as shown and described.

"2. The open spiral link B formed of coils of tubing, substantially as shown and described.

SHUBAEL COTTLE."

Fig. 1.

Fig. 2.

Fig. 3.

. The court below sustained the validity ot the letters, enjoined the defendant from infringing them, and awarded damages to the complainants. Pearce thereupon appealed.

Mr. *Henry Baldwin, Jr.*, for the appellant, cited *Phillips* v. *Page*, 24 How. 164; *Rubber Tip Pencil Company* v. *Howard*, 20 Wall. 498; *Collar Company* v. *Van Dusen*, 23 id. 530; *Dalton* v. *Jennings*, 93 U. S. 271; *Glue Company* v. *Upton*, 97 id. 3; *Rubber-Coated Harness Trimming Company* v. *Welling*, id. 7.

Mr. *Benjamin F. Lee*, contra.

Cottle having accomplished in the manufacture of gold chains a new and useful result, an increase of efficiency, and a decided saving in the operation, was clearly entitled to a patent. *Gayler* v. *Wilder*, 10 How. 477, 484; *Smith* v. *Goodyear Dental Vulcanite Co.*, 93 U. S. 486; *Rich* v. *Lippincott*, 2 Fish. Pat. Cas. 4; *Strong* v. *Noble*, 3 id. 586; *Goodyear Dental Vulcanite Co.* v. *Willis*, 7 Pat. Off. Gaz. 41; *Dalton* v. *Nelson*, 9 id. 1112; *Walton* v. *Potter*, 3 Man. & G. 438; Curtis, Patents (4th ed.), Prel. Obs. p. xxx.

MR. JUSTICE STRONG, after stating the case, delivered the opinion of the court.

In view of the evidence found in the record, it cannot be questioned that ornamental chains composed of alternate closed links and spiral links, or formed by spiral links alone, had bee, known and in use long before Cottle made his alleged invention. As was said by the circuit judge, " Chains formed by split rings which are sprung into each other, or into a solid link, are familiar articles, and there can be no novelty in the mere shape or form of the chain, or of the link which is shown in the drawings of the patent." There is abundant evidence, not only that split rings had been long in use, but that other spiral links had been made and used before 1873, when the patentee claims to have made his invention. If, therefore, there be any novelty in the link which is the subject of the second claim it must consist in the fact that the spiral link is formed of tubing. Tubing itself, as understood in the jeweller's art, is made by compressing a strip of gold around a brass or copper wire, and then forcing it through a draw-plate, the holes in which decrease gradually in diameter until the edges of the gold strip are com-

pletely united.   The copper wire is then eaten out by an acid, and the tubing is complete.   Both the product and process have long been well known.   And so have been spiral rings formed of gold tubing.   The tubing, before the wire is removed, is wound into coils around a mandrel, and cut into desired lengths.   The coils may then be pressed together by a wire and annealed, the wire having been removed, or the compressing and annealing process may be omitted.   Such spirals have a certain degree of elasticity, which enables them to be sprung upon other links, and when thus sprung into other closed or open spirals they will form a chain.   The well-known serpent bracelet was such an open spiral, such a double link, and several of them, sprung together alternately with closed links, would have formed a chain identical in principle with that of the patentee.   There certainly is nothing patentable in merely reducing the size of the bracelet so as to adapt it to use in a necklace. The record also contains evidence that other spiral rings or links made of gold tubing, some of them open and some closed, by soldering, were made before 1873.   It is to be observed that the second claim in the patent is not for any process of making a link; not for making tubing, or winding it into spiral forms; not for tying or annealing the coils when they have been wound: but for an open link, consisting of one or more coils of tubing of the proper length, so as to form a double spring link, into each end of which is soldered a small shot to give the link a finish.   This is all the description the specification gives of the link.   It is not intimated that the coils must be brought into close contact with each other, or annealed, and it is simply said the links may be colored or polished.   The form of the link, when made of gold tubing, is all that is attempted to be patented. · The constituents are not.   The patentee has testified that as long as he had known anything about the manufacture of jewelry he had known tubing to be used in the art; that for many years he had known shot put into the ends of such tubing, and that for a number of years he had known links formed of tubing with shotted ends. We think, therefore, the evidence sufficiently establishes that the second claim is void for want of novelty in the alleged invention.

The first claim read in connection with the description given in the specification and drawings is for an ornamental chain, consisting of solid links and open spiral links made of tubing, the latter being finished before they are sprung into the solid links, and the connection being made by thus springing the links together. In considering whether this can be sustained, it is necessary to observe what was the state of the art and what was known when Cottle claims to have invented the device for which he obtained the patent. Chains having alternate open and closed links, the open links being spiral and sprung into the closed links, were known. So were chains made entirely of spiral links, and even of open spiral links. A chain had also been made and worn, and it was for sale in the stores, the links of which were hollow. They were made solid, with copper wire inside. The copper wire was then destroyed, leaving the links hollow, and they were then sprung together to form a chain. The chain was thus composed of open spiral links made of hollow metal; that is, of tubing. It is true, as appears from the model which is an exhibit in the case, the two ends of the spiral were bent outward and the coils were soldered together after the links had been sprung into each other. Still, when thus sprung into each other, they made a chain formed of open spiral links of tubing. The soldering was a distinct and after process. Omitting that process and the outward deflection of the ends, and alternating the links with other links made closed and solid, the chain would have been substantially the same as that of the complainants. We cannot think the advance which the patentee made upon that can be called invention. Leaving the links open after they have been sprung into closed links, there being no novelty in the links themselves, cannot be patentable. It is nothing more than the exercise of ordinary mechanical skill. If in one of the complainants' chains, after the links had been joined, a person should solder the spirals together or to the closed rings, it could hardly be maintained that a new chain had been invented. Or if, when thus soldered, the soldering should be removed, the change would not deserve to be regarded as a product of invention. Yet this is substantially what the patentee has done. His chain may have been an improve-

ment on the chains that preceded it. In some particulars it doubtless was. It left the elasticity of the spiral gold tubing more free by releasing the link from the attachment of the soldering, and it enabled the chain to be freely taken in pieces without injury to its structure. But all improvement is not invention, and entitled to protection as such. Thus to entitle it, it must be the product of some exercise of the inventive faculties, and it must involve something more than what is obvious to persons skilled in the art to which it relates.

In this case neither the tubing, nor the open spiral link formed of tubing, nor the process of making either the open or the closed link, nor the junction of closed and open spiral links in a chain, was invented by the patentee. We are, therefore, constrained to hold that the first claim of the patent, even if not void for want of novelty, is void for want of patentability.

· The decree of the Circuit Court will therefore be reversed, and the cause remanded with directions to dismiss the bill.

*So ordered.*