WILLIAM SCHWARZWAELDER & CO. v. CITY OF DETROIT et al.

(Circuit Court, E. D. Michigan. September 18, 1896.)

No. 3,386.

1. PATENTS—PATENT AS PRIMA FACIE EVIDENCE.

The patent itself is prima facie evidence that the patentee was the original inventor; and if another claims to have been a joint inventor with him, and gives testimony to that effect which is wholly denied by the patentee, the presumption arising from the patent must prevail, there being no other evidence.

2. SAME—INVENTION—FOLDING CHAIRS.

   Producing a cheaper and more durable folding chair than any before made is not invention, where all the parts have been taken from prior constructions, and each part does the same work and in the same way as before.

3. SAME—NOVELTY—LARGE SALES AS EVIDENCE.

   The fact that an improved device or machine meets with a ready sale, and has largely superseded other constructions, is given weight only when the questions of novelty and invention are in doubt.

4. SAME—MECHANICAL EQUIVALENTS—FOLDING CHAIRS.

   In a folding chair trunnion pins to connect the seat with the two uprights at the back, which are made to straddle the rear part of the seat, are the mechanical equivalents of metallic castings forming a journal, or metallic hinges, for making the same connection.

5. SAME.

   The Chichester patent, No. 328,838, for an improvement in folding chairs, is void for want of invention.

This was a bill in equity by William Schwarzwaelder & Co. against the city of Detroit and others for alleged infringement of a patent relating to folding chairs.

Briesen & Knauth and N. S. Wright (Arthur v. Briesen, of counsel), for complainant.

Parker & Burton, for defendants.

SWAN, District Judge. The complainant is a corporation organized under the laws of the state of New York, and is the owner, by assignment, of letters patent No. 328,838, issued to L. A. Chichester October 20, 1885, for improvement in chairs. The defendants Mills, Lichtenberg, Dwyer, and Avery constitute the board of inspectors of the house of correction of the city of Detroit, and the defendant Joseph Nicholson is the superintendent of that institution. The bill charges the several defendants with infringement of the Chichester patent, and asks an injunction against further infringement and for an accounting.

It appears from the testimony that the Detroit House of Correction manufactured and sold, after the issue of the Chichester patent, and before the beginning of this suit, a chair designated in the record as "Complainant's Exhibit, House of Correction Chair," and that such chairs were made under the instructions of the superintendent, defendant Nicholson, at the house of correction, and that the money returned from these sales was turned over to the city of Detroit. The defendants admit that, about the month of July, 1893, they were notified by complainant's representative that the chairs manufactured after the pattern of "Complainant's Exhibit, House of Correction Chair" were infringements upon the rights conferred by said letters patent; that, prior to such time, neither of the defendants had knowledge of said patent or the complainant's claims thereto; and "that, immediately upon receiving said notice, these defendants ceased wholly to manufacture such chairs," and "have subsequently wholly refrained from manufacturing." The pleadings put in issue the question of complainant's right to relief because of its alleged failure to stamp or mark as

patented, conformably to the requirements of law, the chairs by it manufactured. There is some conflict of testimony upon this point, which, by reason of the view taken of the main questions, it is unnecessary to decide.

A further preliminary question arises upon the fact that the only acts of infringement proved were the manufacture and sale of chairs complained of, under the direction of defendant Nicholson, as superintendent of the house of correction, without the knowledge of the board of inspectors. This penal institution is the creature of state legislation. Its status is defined by section 9845, How. Ann. St. Mich. It is claimed by defendants that, under this act, as construed by the supreme court of Michigan, in Detroit v. Laughna, 34 Mich. 402, the city of Detroit is not responsible for the acts of the superintendent, but the government of the prison is put wholly under the control of the board of inspectors, who, although appointed by the common council of the city on the nomination of the mayor, exercise the controlling power in the government of the affairs of the institution. The supreme court of Michigan in that case also held that, notwithstanding the mayor of the city and the chairman of the board of state prison inspectors were made ex officio members of the board of inspectors of the house of correction, nevertheless—

"Any interference whatever by the common council, either in the selection of inferior officers or in the internal management of the prison, would be unlawful and nugatory. * * * It is impossible, under such a law, to regard the city of Detroit either as custodian of the prison or as jailer and guardian of the prisoners. The officers are not city agents, and the city has nothing to do with their responsibility. It has no means of directing or of checking their action under the law, and the liability to respond for their misconduct cannot be laid upon the municipality, between whom and them there is no relation of agency or service."

It would seem, from this statute and the construction given to it by the supreme court of Michigan, that the complainant, if entitled to redress, has no remedy against the city for the alleged infringement.

It is also contended that the board of inspectors are also exempt from liability because their office is entirely honorary, and that it would be inequitable to hold them liable for tortious acts not directed or sanctioned by them, and committed, as it is claimed, without their knowledge, and wholly by the direction of the superintendent. Their immunity, however, for the acts of the superintendent, notwithstanding his powers and duties are governed by the general laws of the state of Michigan and the act establishing the Detroit House of Correction, is not so clear. It is unnecessary, however, to determine the question of their liability, or the validity of the defense urged in their behalf, nor yet that put forth for the protection of the superintendent.

The case turns upon the validity of complainant's patent, which the defendants deny on two grounds: (1) That there is no novel invention in the structure claimed; (2) that the structure covered by the patent was the result of consultation between two parties, one of whom was not the applicant named in the patent nor a

grantee therein. The second defense may be dismissed with the remark that whatever of invention inheres in the structure must be regarded as originally and rightfully the property of Chichester, to whom the patent issued. The letters patent themselves are prima facie evidence of the patentability of the article, and that the patentee is its inventor. This presumption must be overcome by clear proof and a preponderance of evidence in order to defeat his claim. The testimony of Chichester, the original patentee, denies in toto that of Williams, who claims to have been a joint inventor with Chichester of the most improved features of the chair in question. There is no other material evidence upon this point, and, the testimony being thus in equipoise between Chichester and Williams, it is insufficient to deprive the former of his monopoly, if any he has.

The single question remaining is as to the novelty of the invention. It is necessarily conceded that the Chichester chair is a combination of old elements. The merits claimed for it are that it can be folded more compactly, and thus occupy less space in shipment, than other chairs, and can be made at less expense, and is less likely to get out of order because of its simplicity of construction. It has no new features, however, not found in either the Bean & Fox patent, No. 168,324, issued October 19, 1875; the Sellig patent, No. 198,418, issued December 18, 1887; the English patent to Newton, No. 2,022, issued June 23, 1868; the Weller patent, No. 188,324, issued March 13, 1887; the Dieterich patent, No. 88,776, issued April 13, 1869; the Ware patent, No. 187,944, issued February 27, 1877; or the Stewart patent, No. 106,633, issued August 23, 1870. With reference to these patents, it is well said by the examiner, as appears in the file wrapper of the Chichester patent, in his letter to Chichester of September 30, 1885:

"The case involves certain slight variations not found in the patents to Weller, Stewart, and the English patent, 2,022; but it is not apparent that such variations are more than mere immaterial changes of old contrivances,—that is, changes not effecting any new result."

The examiner further said:

"If the specification should be amended to include a disclaimer setting forth a construction proved to be old, the differences therefrom involved in applicant's case, and the new result or advantage incidental to such differences, the case would be further considered."

In accordance with this suggestion, Chichester amended his application, preceding his claim by the following statement:

"Now, I am aware that, prior to my invention, a chair has been made in which the front and rear legs are crossed and pivotally connected, the back posts of less width than the front legs, and of continuous pieces therewith, and the seat pivoted directly to the front legs, and engaging the rear legs by a guide loop on its bottom, and of less width behind than before, so that the seat may be folded up against the back, but, when so folded, the seat does not lie flat against and parallel with the back, but stands out angularly therefrom. I am also aware of a chair in which the front legs and back posts are of continuous pieces, the seat of a less width behind than before, and pivoted about centrally to the front legs, and combined with slotted rear legs, or slotted rear legs and rear braces or links; but I lay no claim to any such construction."

Following this disclaimer, he thus states what he claims as new:

"In a folding chair, the combination of the front legs having pivots, b, and the rear legs, C, having slots, a, engaged by said pivots, a seat, D, with its rear half of less width than its front half, and secured directly to the front and rear legs by fixed pivots, and said front legs, continuous with and of greater width than the back posts, B, to permit the seat to be folded up parallel with said back posts, substantially as set forth."

(No Model.)

L. A. CHICHESTER.

CHAIR.

No. 328.838      Patented Oct. 20, 1885.

It is evident, from this disclaimer in his specifications, and from his description of his own invention, that the excellence which he claimed to have achieved in this article of manufacture lies in the fact that the chair of his construction folds parallel and more closely than those of other construction. This claim is scarcely sustained by the proof, for Complainant's Exhibit 1, the Sellig chair, though differing in some points of construction and somewhat in form, may be folded as closely as Chichester's. Chichester dispenses with the hinge used in Complainant's Exhibit 1, and thus simplifies and cheapens, and perhaps strengthens, the structure; but the seat narrowed in the rear part, and the parallel folding of the front and rear legs, which are claimed as the meritorious features of the Chichester chair, are equally present in the Sellig and other chairs. Complainant's chair has no part which does not work in the same manner and perform the same functions as those performed by its corresponding part in other chairs made previously to his invention. The most favorable construction which can be given to the patent is that the article constitutes an improvement over prior manufactures, but it embodies no new principle or mode of operation not utilized before by other inventors. Improvement and invention, however, are not convertible terms. An improvement is not necessarily an invention, while an invention is prima facie an improvement. As said in Pearce v. Mulford, 102 U. S. 112, 118:

"All improvement is not invention, and entitled to protection as such. Thus to entitle it, it must be the product of some exercise of the inventive faculties, and it must involve something more than what is obvious to persons skilled in the art to which it relates."

The same thought is still more forcibly expressed in Atlantic Works v. Brady, 107 U. S. 192, 200, 2 Sup. Ct. 225, 231, by Mr. Justice Bradley, who says:

"The design of the patent laws is to reward those who make some substantial discovery or invention which adds to our knowledge and makes a step in advance in the useful arts. It was never the object of those laws to grant a monopoly of every trifling device, every shadow of a shade of an idea which would naturally and spontaneously occur to any skilled mechanic or operator in the ordinary progress of manufactures."

His language is quoted and approved in Thompson v. Boisselier, 114 U. S. 1, 12, 5 Sup. Ct. 1042, which cites many decisions of that court of the same tenor.

Equally pertinent and expository of the essentials of a patentable invention is the opinion by Mr. Justice Swayne, in Smith v. Nichols, 21 Wall. 112, 119, in which it is said, with his characteristic vigor and felicity of expression:

"But a mere carrying forward, or new or more extended application of the original thought, a change only in form, proportions, or degree, the substitution of equivalents, doing substantially the same thing in the same way by substantially the same means with better results, will not sustain a patent."

To the same effect is Roberts v. Ryer, 91 U. S. 150, 159. The doctrine of these cases is applicable here. As said in Smith v. Nichols, supra:

"All the particulars claimed by complainant, if conceded to be his, are within the category of degree."

Granting that Chichester has succeeded in producing a more durable and cheaper folding chair than his predecessor in that line of manufacture, the adjustment of parts by which this has been accomplished is not invention. The fact remains that he has done this by substantially the same means which others have employed. He has evinced good judgment in the selection from prior patents of the several parts which he has aggregated in his chair, but each of these parts does the same work which it performed in the chair from which it was taken, and in the same way. The superiority of his manufacture, and the fact that his chair can be more cheaply made than prior constructions, are not sufficient to sustain his claim to invention. This excellence and economy are ends, not means. The means or device by which these effects are obtained were not original with him, and therefore not patentable. Knapp v. Morss, 150 U. S. 221, 227, 14 Sup. Ct. 81; Florsheim v. Schilling, 137 U. S. 64, 67, 11 Sup. Ct. 20. He has made an improvement in degree, but has invented nothing patentable. Burt v. Evory, 133 U. S. 349, 10 Sup. Ct. 394; Trimmer Co. v. Stevens, 137 U. S. 423, 435, 11 Sup. Ct. 150. Every feature of his manufacture is confessedly found in one or the other of the anticipating patents above mentioned. A combination of old elements, if it produces new and useful results, is of course patentable; but such results must be "a product of the combination, and not a mere aggregation of several results, each the complete product of one of the combined elements. Combined results are not necessarily a novel result, nor are they an old result obtained in a new and improved manner. Merely bringing old devices into juxtaposition, and then allowing each to work out its own effect, without the production of something novel, is not invention." Hailes v. Van Wormer, 20 Wall. 353, 368; Bussey v. Manufacturing Co., 110 U. S. 131, 4 Sup. Ct. 38; Pickering v. McCullough, 104 U. S. 310, 318; Hendy v. Iron Works, 127 U. S. 370, 8 Sup. Ct. 1275. The result effected by the patented construction is not new, nor is the mode of operation, although the manner of its production is a more successful application of the mechanism found in other chairs.

It is urged that the fact that it meets with a ready sale to the trade, and has largely superseded other constructions, is decisive that it possesses patentable novelty; but this circumstance is given weight in the construction of a patent only where the question of invention is in doubt. Duer v. Lock Co., 149 U. S. 216, 13 Sup. Ct. 850; Krementz v. S. Cottle Co., 148 U. S. 556, 13 Sup. Ct. 719; Manufacturing Co. v. Adams, 151 U. S. 139, 14 Sup. Ct. 295; Adams v. Stamping Co., 141 U. S. 539, 12 Sup. Ct. 66; McClain v. Ortmayer, 141 U. S. 419, 12 Sup. Ct. 76. In the latter of these cases, the extent to which a patented device has gone into use is held to be per se an unsafe criterion of its patentability. A somewhat closer and more compact folding of the Chichester chair is obtained than in prior manufactures, but, as already said, the Sellig chair, although more complex in its parts, and perhaps somewhat more expensive in construction, is capable of folding as closely as complainant's; and, even if this were not true, the compactness of the fold is merely comparative, not patentable.

Great stress is laid, in support of the patent, upon the fact that the seat is pivoted in the broad portions of the back or body by trunnion pins, so that the two uprights of the back stand close to the rear of the chair seat, straddling it, and allowing the pintles or trunnions of the chair body to enter holes made for their reception in the broad portions of the back or body; the seat being wider in front than in rear, so that it can fold against the back, and so that it may properly connect with the rear legs. Prior constructions use a metallic casting for a journal, or connect the seat with the back posts by a metallic hinge. Both these methods of uniting the seat to the back of the chair, so that the seat should be movable, and co-operate to the close fold of the chair, are substantially equivalents in their operation and effect. Chichester's device is preferable to that in which the metallic hinge is used, in that it has the merit of greater simplicity, and is less liable to get out of order from use; yet it does not rise to the dignity of invention. Such a device would suggest itself to a skilled mechanic, and had been employed in the Box patent. It is doubtless an improvement in construction, but is not patentable. The same is true of the narrowing of the rear of the seat. This feature is part of the mechanism of earlier manufactures to obtain the close fold. It is found in the Dieterich patent of August 13, 1869, and in that of Weller of March 13, 1877, where it evidently performed the same office and has the same purpose as in Chichester's chair. The first, second, and fourth claims of Chichester's original application were rejected by the patent office because of the Dieterich patent. There is little, if any, difference between the construction described in the rejected claims and that claimed as the invention of Chichester in the patent. It is doubtful if a skilled mechanic, following the language of the rejected claims, could succeed in making a chair which would differ in any material respect from that described in the patent. It is difficult to discern in the fact of Chichester's disclaimer what, if any, novelty of construction he reserved to himself. The reduced width of the rear of the seat and the reduced width of the back posts, which, taken together, he styles in his specifications "an important feature" of his invention, are both found in the methods of construction which he disclaims; and, while he has dispensed with the guide loop used by some makers, he was forestalled in this improvement by earlier patentees.

A careful comparison of the patented chair with those in public use before its invention, and with those made under anticipatory patents, leads to the conclusion that the variations of the patents from prior constructions cannot be properly classed as invention, but are the suggestions of mechanical skill. The bill should be dismissed, with costs.