## REX MFG. CO. v. KESTENMAN BROS. MFG. CO.

### No. 268.

District Court, D. Rhode Island.
April 21, 1930.

Herbert B. Barlow, of Providence, R. I., for plaintiff.

Perley H. Plant, of Providence, R. I., for defendant.

LETTS, District Judge.

This is a suit in equity for infringement of United States letters patent No. 1,622,989, granted to the plaintiff, as assignee of one John P. Benjamin, on March 29, 1927; the application therefor having been filed June 5, 1926. The bill contains the usual prayers for an injunction restraining a continuance of the alleged infringement and for an accounting for damages and profits.

There is no question as to the substantial equivalent or identity of the article manufactured by the defendant with that sold and manufactured by the plaintiff in accordance with the claims and design of the letters patent. If the patent be valid, there is an infringement.

The alleged invention relates to an extension device shown as used in connection with a wrist watch strap. It consists of two metal parts, hinged together at their inner ends and so designed that when one part is folded upon and into the bottom and side walls of the other member, the folded unit will closely fit the shape of the wrist. To the free end of this extensible member, which folds upon and into the other member, is attached a strap, the other end of which strap is connected with the wrist watch. Near the

free end of the other or under section a hooked-shaped tongue is formed from the bottom wall of that section, the open or unattached end of which hook points inward toward the point at which the two sections are hinged. The design shows a strap with a series of holes spaced at regular intervals along the central line of the strap for a short distance from one end. This strap is attached, one end to the watch and the other to the lower metal part by engaging any one of the holes in the strap with the hook described, the series of holes in the strap making it possible, in union with the hook, to adjust the length of the whole unit for any size of wrist or to remove the watch without slipping it over the hand by unhooking the strap after having opened the folding sections.

In the specifications of the patent the operation of the device is explained as follows: "By the use of my improved extensible member in a wrist watch strap, I am enabled to quickly extend the operating length of the strap by one unfolding action to quickly extend the length of the strap sufficiently to enable the watch to be slipped over the hand of the wearer. Then again, by the provision of a hook on the inner face of one of the links I am enabled to readily disconnect one end entirely, also to readily adjust the operating length of the strap, and also I am enabled to connect the adjustable end of the strap part onto the hook and then lock this end against separation by folding and locking the other link part over this connected strap end."

The plaintiff has for some years been engaged in the jewelry manufacturing business, and, through the manufacture and sale of the article described, experienced for a time a substantial increase in the volume and profits of its business. Approximately six months after the plaintiff began the manufacture and sale of the article, the defendant entered the market with an extension bracelet strap, which, excepting for a few minor details, was substantially identical with that described. It appears that the defendant was notified of the plaintiff's patent and of its claim of infringement. The defendant continued, however, its manufacture of the article upon the advice of counsel that the patent here involved was not valid. The determination of that question is the only one here presented.

In reviewing the various prior patents cited by the defendant in its answer, as anticipations and as illustrative of the prior state of the art, I have given the fullest possible weight to all presumptions in favor of the patent in suit, to the end, if possible, of discovering in the disclosures and claims of the patent some feature of invention.

It is clear that the folding or collapsible links or members, so shaped as to fit closely and comfortably against the wrist and affording one of the extensible features of the device, is not new.

The early Mealy patent, No. 1,564,606, granted December 8, 1925, clearly covers these parts and characteristics of the device in question. In the specifications of that patent the inventor says: "This invention relates to certain new and useful improvements in wrist watch straps and the primary object thereof is to provide novel and improved means for enabling the strap to be lengthened so as to permit of disengagement thereof from the wrist without disconnecting the ends of the strap from the watch."

The second claim of the Mealy patent is as follows: "In a wrist watch strap, a pair of straps, a pair of connector sections hinged together at their inner ends and connected to the respective straps at their outer ends, said sections having sides, one section receiving its strap between its sides and the latter section being received between the sides of the other section, and means to latch the sections together including keepers on the sides of one section, and a pin securing the strap of the other section thereto and formed to have its ends snap into the keepers."

Counsel for the plaintiff in his brief, recognizing the prior use in the art of many of the features claimed by the patent in suit, says: "And while it is conceded that these features may be found, and it is necessary that we direct our principal attention to the hook and the strap with openings therein for the adjustment as to the working length of the strap to fit wrists of different sizes. * * * "

Coming directly, therefore, to the features of the device involving the hook and the adjustable attachment thereto of the strap which are involved in the various claims, they may be substantially summarized as follows:

The formation of the hook from the bottom wall of one link or member, extending toward other member when closed.

The extension of the hook over strap when attached.

The adjustability effected by the plurality of openings in the strap, any one of which may, at choice, be engaged with the hook.

Claim 5 also incorporates the characteristic of the design which provides an opening in the upper of the two links directly over the hook so as to permit a more compact nesting of the two members.

I am unable to perceive, however attractive or merchantable the article as a whole may be, any invention in these characteristics claimed. They indicate artful designing, but not invention. The use of a hook in association with a strap attached thereto with multiple holes to permit extension or shortening is old in almost every field of mechanical art. One may not confine the consideration of the claims here made to a few patent references and exclude that which is the common knowledge of mankind. For example, in claims 1, 2, and 4 of the patent in suit there is included that feature by which the hook when engaged with the strap extends "through said opening and over said strap." One might as well claim in association with a wheel its circular character. It is apparent that, if a strap be engaged with a hook, the hook will extend over the strap to whatever length its exposed end is parallel thereto.

All the other characteristics present and here claimed relating to the strap with several holes therein to be connected with another member by inserting over a hook, even if they were here first employed as an extensible wrist watch strap, do not function mechanically differently than if used with a trunk strap, bundle holder, barrel hoop, or other device.

Leaving out of consideration the later Mealy patent, No. 1,590,641, which, though earlier applied for, was not granted until after the date of the filing of the application of the patent in suit, the earlier Mealy patent above referred to, the Epling patent, No. 1,129,969, when studied in conjunction with the other references cited, would readily suggest to one of ordinary mechanical ability, if supplemented by practical designing for a specific use, every characteristic claimed in the patent in suit. It is true that none of these patents make use of a hook formed in the exact manner of the present design, but, as I have already indicated, there is not invention, within the meaning of the patent law, in that feature.

As the court said in the case of Pearce v. Mulford, 102 U. S. 112, 118, 26 L. Ed. 93: "But all improvement is not invention, and entitled to protection as such. Thus to entitle it, it must be the product of some exercise of the inventive faculties, and it must involve something more than what is obvious to persons skilled in the art to which it relates."

Philips, J., in the case of Tiemann v. Kraatz (C. C. A.) 85 F. 437, 439, in an early case, said, in reference to what constitutes invention: "In this day of increasing demand for new and enlarged mechanical appliances, the first natural result is the production of a large class of skilled and experienced mechanics and artisans, and, second, a more studious and constant development in applied mechanics. And, as such advance plainly points out to the attentive and assiduous workman the natural, larger, practical adaptation of existing, known mechanical devices, to invest each one of these developments with the immunity of a monopolizing patent would not only be a perversion of the term 'invention,' but would utterly extinguish the doctrine of mechanical equivalents." See, also, Atlantic Works v. Brady, 107 U. S. 199, 2 S. Ct. 225, 27 L. Ed. 438.

While the aforementioned cases embody relatively early declarations of principle, they still represent sound doctrine, subject only to the necessity of qualifications under special facts and conditions.

I am constrained to hold that each of the several claims in the patent here involved are void for lack of patentability.

A draft decree in accordance with these determinations for the dismissal of the bill, with costs, may be presented for settlement.