**LACLEDE–CHRISTY CO. v. UNION FIRE BRICK CO. et al.**

Civ. No. 9067.

United States District Court, W. D. Pennsylvania.

July 11, 1951.

William B. Jaspert, Pittsburgh, Pa., for plaintiff.

Owen & Owen, Carl F. Schaffer, Henry K. Leonard, and Allen Owen, all of Toledo, Ohio, Brown, Critchlow, Flick & Peckham and Paul N. Critchlow, Jr., all of Pittsburgh, Pa., for defendants.

CLARY, District Judge.

*Sur Pleadings and Proof.*

This is an action for declaratory judgment under the provisions of Title 28 United States Code, Section 2201, which challenges the validity of a patent for solid flue checkers issued to defendant Harry W. Walters. Upon pleadings and proof I make the following

*Findings of Fact.*

1. Plaintiff, Laclede-Christy Company, is a corporation organized and existing under the laws of the State of Missouri; defendant Union Fire Brick Company is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania; defendant Harry W. Walters is a resident of the City of Pittsburgh County of Allegheny, Commonwealth of Pennsylvania; all defendants have places of business and transact business in the City of Pittsburgh in the Western District of Pennsylvania.

2. Defendant Harry W. Walters is the patentee and license owner of Patent in suit, No. 2,519,301 granted August 15, 1950; defendant Union Fire Brick Company, as licensee, manufactures the refractory tile used in the construction of the solid flue checkers, the subject matter of the patent in suit.

3. The Patent in suit discloses solid flue checker work made of two shapes of refractory brick or tile, one of which is in the form of a Greek cross and the other is a standard refractory brick, the tile being so arranged that the standard brick interlocks with the Greek cross brick and the successive layers have the two shapes alternating in direction.

4. Checker work built of refractory brick having their surfaces arranged to absorb and give off heat have been in general use for preheating air in hot blast stoves for blast furnaces, in regenerators for open hearth furnaces, and in recuperators for glass melting furnaces for many years.

5. Both plaintiff and defendant, Union Fire Brick Company, manufacture, sell and

advertise solid flue checker work as shown in the Walters patent in suit.

6. Defendant Harry W. Walters has charged plaintiff with infringement of Patent No. 2,519,301 in suit and plaintiff has denied this charge contending that the patent is invalid. Plaintiff brought this action for a judicial determination of the questions of validity and infringement of such patent and for other relief. Defendants have counterclaimed for an injunction restraining plaintiff from infringement of said patent and for an accounting for general damages.

7. Checkers are generally divided into two classifications: open flue checkers in which gases can pass between flues horizontally through openings in the walls thereof as well as vertically through the flues, and closed or solid flue checkers in which gases can flow only vertically. Solid flue checkers eliminate many horizontal ledges on which sticky deposits carried over from the furnace can accumulate and they also provide a greater mass of brick for a given volume. Because of changes in types of fuel used, solid flue checkers are being used more extensively than heretofore.

8. For many years the problems presented to workers in the art have been stability and durability of brick checker work structures during assembly and use and cleaning operations performed during use. Checkers are manually assembled one brick at a time and racked in steps of a few courses each. Workmen assembling a checker are liable to displace individual bricks. During assembly some outside walls of the checker are not supported by the chamber walls and are thus "free standing" unless tied into the structure by interlocking of brick. In older furnaces there occur spaces between the exterior of the checker structure and the walls of the checker chamber which leave the exterior of the checker unsupported. Intermittent heating and cooling of checker brick causes them to "creep" and cleaning or "lancing" of bricks likewise displaces them unless they are tied into the checker work structure. Displaced bricks interfere with satisfactory operation of the checker.

9. Prior to the Walters checker these problems were well recognized and various structures were designed with the aim of providing greater stability. For this purpose various special shapes and combinations thereof were disclosed. Various suggestions for the use of special shapes of brick in solid flue checkers are contained in patents in evidence.

10. The Walters patent discloses a specific solid flue checker employing two simple shapes of brick. The first of these, called $B$ brick in the patent, is a standard commercially available brick having a rectangular prismatic shape called a "straight" in the trade. The second brick, called $A$ brick in the patent, is a solid body brick of the same height and thickness as the $B$ brick having at each of its ends a horizontally extending tenon the full height of the brick and of a length and width equal to one-half the thickness of the $B$ bricks. The tongues are centrally located leaving a substantially rectangular vertical re-entrant notch on each side of each end of the brick. The $A$ bricks are of a length greater than the $B$ bricks by one-half the thickness of the $B$ bricks. The bricks are assembled in the structure with the two bricks alternated in successive courses of each wall of each flue throughout the checker forming solid parallel flues of square cross section.

11. Prior to the issuance of the Patent in suit, Patent No. 935,372, on September 28, 1909, and Patent No. 951,012, on March 1, 1910, were granted to Lamond which disclose and claim solid flue checker work employing two interlocking shapes in which successive layers of the two shapes alternate in direction. In speaking of the assembly of the shapes in continuous or uninterrupted parallel rows in each course, the patent states: "These parallel rows of each course are arranged at right angles to the like rows immediately above and below, so that the shapes A are centered above and below each other, though in reverse or right angle position."

The utility of such shapes alternating in direction in successive courses is described in Lamond patent No. 935,372 as

follows: "The centering of shapes A in right angle relations in succeeding courses provides for effectively bonding or overlapping the joints between shapes A and B, so that none of the joints or seams in one course aligned with the joints or seams of the course immediately above or below, and the integrity of the flue is preserved notwithstanding the distorting tendencies due to expansion or contraction under the wide variations of and sudden changes in temperature."

12. The use of "Greek cross" tile and standard "straights" for the construction of flues or cells has been known to the trade for many years, e.g., patent to Foote No. 429,342 granted June 3, 1890; Hiller-Weber patent No. 2,303,741 granted December 1, 1942. Laclede-Christy proposal sketch dated 4-4-41, and sketches by Gill, plaintiff's exhibits I, J, K, L and M, circulated to the trade in 1943 by Harbison-Walker Co. Inc. See also plaintiff's exhibits "C" and "C-1" of the A. P. Green Company.

13. Overlapping joints to provide greater stability is a principle known to and used in the construction of brickwork for many years.

14. Alternating brick in successive courses to overlap joints was used in building checker work of refractory tile prior to the Walters patent in suit.

15. Changing dimensions of refractory tile to provide square flues, and alternating brick in successive layers to provide greater stability, is the product of the mechanical skill of brickwork and not the product of inventive genius.

16. The checker work in the Walters patent in suit was an improvement upon checker work then in use in the trade, but was not invention.

17. Plaintiff has proven no damages from any act of the defendants in giving notice to the trade of plaintiff's alleged infringement of defendants' patent.

18. The acts of the defendants in the prosecution of the application for the Patent in suit, No. 2,519,301, were proper and in good faith.

19. The acts of the defendants in notifying the trade of plaintiff's alleged infringement of Patent No. 2,519,301 were in good faith.

## Discussion.

This suit was instituted by plaintiff, Laclede-Christy Company, to have determined the validity of Patent No. 2,519,301 issued August 15, 1950 to defendant Walters. Plaintiff advertised and sold checker work of the type claimed in the patent in suit, and defendant Union Fire Brick Company, Walters' licensee, threatened suit for infringement against plaintiff, also advising customers of plaintiff of its intention to institute suit for infringement. Plaintiff thereupon filed this action to test the validity of the patent issued to Walters.

The operation of open hearth furnaces involves the introduction of preheated air into the furnaces for the attaining of extremely high temperatures for melting metal or glass. After the flow of air has been subjected to the extreme heat of the furnace, it is the practice to store some of the heat and use it to preheat air when the process is reversed. To accomplish this object, storing outgoing heat, and preheating incoming air, refractory tile is used in the form of a checkerwork in chambers adjoining the furnace. The checkers are situated on both sides of the furnace so that air is preheated by being passed through one checkerwork, then carried over the furnace and subjected to extreme heat, thence through the checker work on the other side where the hot air and gases pass through and around the refractory tile in the opposite chamber, heating the tile and causing much of the heat to be retained there. The process is then reversed and air is passed through the heated tile, preheated and passed over the furnace and through the chamber on the other side and so on. This method has been in use in the industry for many years.

In the course of the operation, particles of dust and gummy substances are deposited on the tile, necessitating cleaning at intervals to permit the free flow of

hot air and gases. This cleaning is performed by various methods. Frequently in the cleaning operation bricks are displaced in the checker work, resulting in obstructions to the flow of air and gases. Further displacements of brick result from "creeping" of the tile due to the high degree of expansion and contraction of the tile in the extreme changes of temperature.

The checker work in the chambers is ordinarily replaced after every "campaign" of the furnace, a "campaign" being over when the roof of the furnace buckles and collapses from the extreme heat. The checker work is then built up with refractory tile in preparation for the next campaign.

Checker work is divided into two very general types, open and solid flue checkers. The open type provide for horizontal as well as vertical flow of air and gases, while the solid flue checkers provide only for vertical flow. Both types have been known to the trade for many years, the open type being heretofore the more popular. Due to relatively recent changes in types of fuel used, it is no longer necessary or desirable to provide for the horizontal flow and the solid flue type checker has apparently displaced the open flue checker in popularity and usefulness.

The foregoing has been related as a background to a discussion of defendant Walters' claim of invention in Patent No. 2,519,301. The essential points relied on by the defendant in asserting the validity of his patent as disclosed by the claims made in his patent application are (a) a checker work consisting of solid parallel vertical flues, (b) made up of two shapes of brick, one, a standard straight and the other a special shape having rectangular re-entrant angles along each vertical side into which the straights are placed, (c) brick so proportioned that they could be laid in alternating courses with the brick of one type being parallel to each other in one course and at right angles to brick of the same type in the courses immediately above and below it, and (d) brick so proportioned that the tongues of the "special" bricks are in contact with the tongues of special brick in courses immediately above and below it.

This was clearly a combination of factors already known to the trade, as will be hereinafter shown by a discussion of the prior art, and the only question is whether the combination exceeds the sum of its parts. I think it does not and, therefore, the patent is invalid for lack of invention.

As to (a) above, solid flues, that they were known to the trade for many years, is apparent from the patents issued to Foote in 1890, No. 429,342, to Roberts in 1893, No. 511,253, and to Roberts in 1912, No. 1,032,505.

As to (b) above, the use of straight brick and brick of Greek cross design, the sketches of Gill circulated to the trade by Harbison-Walker Refractories, Inc. in 1943, employ straight and Greek cross tile in the same combination. The patent of Foote, No. 429,342 (1890) likewise makes use of the same principle with the exception that the Greek cross tile has a beveled edge rather than a rectangular re-entrant angle and the "straight" is not strictly a straight in that it has beveled edges rather than sharp edges. In his application, however, Foote indicated that the re-entrant angles could take a variety of shapes. Greek cross and straight tile were likewise used in a proposal sketch of Laclede-Christy dated April 4, 1941, though there is no evidence that this was circulated to any extent, if at all. Another design showing a special shape along the line of a Greek cross combined with a straight is that of Milner No. 2,257,392 (1941) portrayed in the catalogue of A. P. Green Co. Hiller-Weber, Patent No. 2,303,741, also used the same principle except that the Greek cross special shape was combined with another special shape.

Alternating courses, (c) above, the one feature above all the others upon which the defendants rely for invention, is used clearly in both patents of Lamond, No. 935,372 (1909) and No. 951,012 (1910). True the Lamond designs employ two special shape bricks, with one special shape having the re-entrant angle in the center,

rather than at the ends, but the bricks are so proportioned to permit and actually do employ the principle of alternating courses.

As to (d) above, proportioning the bricks so that the tongues of the special shape bricks contact the tongues of special shape bricks in the courses immediately above and below, that is nothing more than the overlapping of joints which is used in Gordon 291,186 (1884), Moore 695,822 (1902) and in the Lamond patents supra.

It appeared clear to me at the time of trial, and a review of the numerous decisions cited by defendants has not changed my view, that Patent No. 2,519,301 lacks invention. It is merely a combination of old elements and matters in the public domain without adding anything disclosing inventive genius. That it is an improvement over existing checkers seems clear, but not every improvement is invention. Pearce v. Mulford, 102 U.S. 112, 26 L.Ed. 93. What Walters did was something which involved mere mechanical skill in brickwork, as testified to by defendant's witness Wright. He testified that the alternating of courses to give greater stability of construction was a matter which should occur to any skilled mechanic, and it certainly so appeared to me without the benefit of expert testimony. The changing of the proportions of the special and straight brick to permit a square flue and thereby the alternating of courses certainly involved no inventive genius and, if it did, it was already disclosed in the patents issued to Lamond.

■ In considering whether the Walters checker was patentable invention, this Court gave due regard to the admonition of the Supreme Court in the recent case of Great A. & P. Tea Co. v. Supermarket Equipment Corp., 1950, 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. ——. The Court there said in an opinion by Mr. Justice Jackson, at page 130 of 71 S.Ct., at page —— of 95 L.Ed.: "Courts should scrutinize combination patent claims with a care proportioned to the difficulty and improbability of finding invention in an assembly of old elements. The function of a patent is to add to the sum of useful knowledge. Patents cannot be sustained, when on the contrary, their effect is to subtract from former resources freely available to skilled artisans. A patent for a combination which only unites old elements with no change in their respective functions, such as is presented here, obviously withdraws what already is known into the field of its monopoly and diminishes the resources available to skillful men. This patentee has added nothing to the total stock of knowledge, but has merely brought together segments of prior art and claims them in congregation as a monopoly."

As indicated before, the Walters checker was a combination of old elements already known to the trade. The old elements which he has used in his checker perform no additional or different function in the combination than they did before.

■ A strict standard was also applied in Cuno Engineering Corp. v. Automatic Devices Corp., 1941, 314 U.S. 84, 62 S. Ct. 37, 86 L.Ed. 58. The court undertook an extensive review of decided cases and reaffirmed that to constitute patentable invention something more than mere improvement is required, Pearce v. Mulford, 102 U.S. 112, 26 L.Ed. 93; something more than ordinary mechanical or engineering skill, Atlantic Works v. Brady, 107 U.S. 192, 2 S.Ct. 225, 27 L.Ed. 438; something more than the ingenuity of a mechanic skilled in the art, Hotchkiss v. Greenwood, 11 How. 248, 13 L.Ed. 683; that the principle of the Hotchkiss case applies to combination of old or well known devices for new uses, Concrete Appliance Co. v. Gomery, 269 U.S. 177, 46 S.Ct. 42, 70 L.Ed. 222. Likewise in Crosley Corp. v. Westinghouse Electric & Mfg. Co., 3 Cir., 1945, 152 F.2d 895, the same strict standards were applied in denying the privileged position of invention and patent to the patents there in suit.

The following quotation from the Cuno case, supra, expresses concisely the standard and the reason therefor.

"* * * That is to say the new device, however useful it may be, must reveal the flash of creative genius not merely the skill of the calling. If it fails, it has

not established its right to a private grant on the public domain. * * *

"Strict application of that test is necessary lest in the constant demand for new appliances the heavy hand of tribute be laid on each slight technological advance in an art." [314 U.S. 84, 62 S.Ct. 41.]

It is clear to me, guided by the standards set forth in the cases above cited, that the changes made by Walters were such changes as would occur to those skilled in the particular art and did not, therefore, constitute patentable invention.

■ The defendants have argued strenuously that the court should consider the commercial success of the Walters checker and the fact of its imitation as bearing on the question whether or not there was invention in the Walters checker. Such matters as utility, imitation, commercial success and fulfillment of a long felt want should be considered only in cases in which invention is doubtful. In a case such as this, where lack of invention has been shown so clearly and by such clear and convincing evidence, recourse should not be had to purely make-weight factors.

Defendants have cited many cases upholding patentabilty of various improvements on elements already known to the trade. A discussion of all the cases would be unnecessarily long and would add very little to what has been said before. It is sufficient to say in general that on the facts of the cases upholding invention there was disclosed improvement involving creative genius and in some few cases evidence of the application of a standard less strict than that set forth by the Supreme Court in the Great A. & P. Tea Co. case supra. For those reasons I do not consider the cases cited by the defendants as controlling on these facts.

■ For the reasons set forth above, the patent of Walters, No. 2,519,301, is clearly invalid for lack of invention and plaintiff is entitled to judgment declaring said patent invalid. It follows as a necessary consequence that there is no merit in the counterclaim of the defendants and judgment will be entered thereon for the plaintiff.

■■ One other matter requires brief consideration. Plaintiff in its complaint and brief was very critical of the methods employed by the defendants in prosecuting the claim for the Walters patent in the Patent Office, and as part of its relief asked for punitive damages because of defendants' conduct in connection with its assertion to the trade of the validity of the patent involved in this suit. I have disposed of the first contention by finding as a fact that the application for the patent was prosecuted in good faith. As to the second feature, I need only remark that all parties to this action are engaged in a highly competitive industry and each used every competitive advantage possible to advance its own particular interest. I do not intend to elaborate on the details of the actions of each party in connection with their attempts to advance the sale of their own particular products. Since this is in the nature of an equitable action, I have determined that while an order will be entered declaring the patent invalid, the order will also require each side to pay its own costs.

### Conclusions of Law.

1. This action is one for a declaratory judgment under the provisions of Title 28 U.S.C., Section 2201, and the Patent Laws of the United States, 35 U.S.C.A. § 31. This Court has jurisdiction of the parties and the subject matter.

2. The action was brought by plaintiff after notice of issuance of patent and after defendants threatened plaintiff's customers with suits for infringement. All the elements of a controversy essential to a declaratory judgment action are present.

3. The Walters Patent in suit, No. 2,519,301, does not reveal inventive concept of anything which did not thereto-fore exist or which was not known to the trade before the alleged invention.

4. The changes which were made to produce the Walters checker, in the aspects in which there are changes from the prior art, are products of mere mechanical

skill and are such changes as would occur to those skilled in the art and therefore not a patentable invention.

5. Plaintiff has overcome the presumption in favor of the validity of the patent No. 2,519,301 by clear and convincing proof.

6. Plaintiff is entitled to relief and judgment will be entered declaring the Patent in suit, No. 2,519,301, invalid for lack of invention.

7. Defendants are entitled to no relief on their counterclaim and judgment will be entered on the counterclaim in favor of the plaintiff Laclede-Christy Company.