GaRebtt, Chief Judge,
delivered the opinion of the court:
This appeal was taken from the decision of the Board of Appeals of the United States Patent Office affirming the rejection by the examiner of all the claims, six in number, of appellant’s application for a patent entitled “Sheet-Feeding Apparatus.”
A general description of the device was given in the decision of the Board of Appeals as follows:
The appealed claims relate to a device for elevating a pile of sheets of paper to be fed to a printing press in such a manner that the top of the pile is maintained at a substantially constant elevation as the sheets of paper are removed from the pile. The pile of sheets rests upon a board which is raised by primary elevating means until the pile is almost exhausted, whereupon the supporting board snaps past spring-biased pawls carried by an auxiliary elevating means which then takes over and continues raising the board and the remainder of the pile while the primary elevator is lowered and a new board and pile are placed thereon. The new pile is raised until the top is in proximity to the board supported by the pawls on the auxiliary elevator and the first board which by that time supports only a few sheets is withdrawn. The operation can thus be continued with little or no interruption of the operation of the printing press. The structure by which these results are accomplished is described in greater detail in appellant’s brief.
*801 . In the brief for appellant and at the oral hearing before us, it was moved to withdraw the appeal as to claims numbered 22, 24 and 25, it being alleged that “the invention appears to be amply protected by claims 13, 21 and 23.” The motion to withdraw will be allowed and the appeal as to those claims is hereinafter formally dismissed.
Incidentally, it may be said at this juncture that the withdrawal so approved eliminates as a reference one of the patents (a British patent No. 463,495, dated April 1,1937, issued to William H. Naylor) cited against a feature expressed in abandoned claim 24 only and appellant agrees that there is no necessity for citation or discussion of that patent in this decision.
The three claims remaining in the case read as follows: ■
13. Sheet feeding apparatus comprising a board adapted to support a pile of sheets, primary elevating means for elevating the board as the sheets are removed from the top of the pile to maintain the top of the pile at a substantially constant height and auxiliary elevating means adapted to engage the board and to continue the elevation of the board as it approaches the upper limit of its travel and to allow the primary elevating means to be lowered ready to elevate a new board and pile, and at least one pawl carried by the auxiliary elevating means in the path of. elevation of the board by the primary elevating means and arranged to be pressed out of that path by the board as it is elevated and to return into the path after the passage of the board ready to engage and to lift the board on operation of the auxiliary elevating means.
21. A sheet feeding apparatus comprising a regid [sic] unitary pileboard suited when held adjacent opposed edges to support a pile of sheets, primary elevating means for elevating the board as the sheets are removed from the top of the pile thereby to maintain the top of the pile at a substantially constant height and auxiliary elevating means arranged to engage the board as it approaches the upper limit of its travel and to allow the primary elevating means to be lowered ready to receive and to elevate a new board and pile, which auxiliary elevating-means include at least one rigid upwardly directed thrust member, means for imparting an upward thrust movement to the member and a pawl carried by the thrust member in the path of elevation of the board by the primary elevating means and arranged to be pressed out of that path by the board as it is elevated and to return into the path after the passage of the board ready to engage and to lift the board on upward movement of the thrust member.
22. A sheet feeding apparatus as claimed in claim 21 in which the board extends outwardly from the pile at the position of engagement by the pawl.
As stated, in substance, in tlie brief of the Patent Office Solicitor speaking in defense of the decision of the Board of Appeals, while that tribunal rejected all the claims as a group, it treated claim No. 13 as the broadest and pointed out certain limitations in claims 21 and 22 not embraced in claim 13 and selected claim 21 as representative.
The references to prior art cited are:
Seybold, 2,094,826, Ocober 5,1937.
Foweraker, 2,204,985 June 18,1940.
*802 In the brief for appellant the involved claims are analyzed as follows:
Claim 13 recites a sheet-feeding apparatus comprising:
1. a board adapted to support a pile of sheets, *
2. primary elevating means for elevating the board as the sheets are removed from the top of the pile to maintain the top of the pile at a substantially constant height,
3. auxiliary elevating means adapted to engage the board and to continue the elevation of the board as it approaches the upper limit of its travel and to allow the primary elevating means to be lowered ready to elevate a new board and pile, and
4. at least one pawl carried by the auxiliary elevating means in the path of elevation of the board by the primary elevating means and arranged to be pressed out of that path by the board as it is elevated and to return into the path after the passage of the board ready to engage and to lift the board on operation of the auxiliary elevating means.
Claim 21 is more specific than claim 13 in reciting that the board is “rigid” and “unitary”. Claim 21 is even more specific in reciting that the auxiliary elevating means includes at least one “rigid upwardly directed thrust member.”
Claim 23 is dependent on claim 21 and further recites “the primary and auxiliary elevating means are arranged to engage the same pair of opposed sides of the board.”
The examiner, in his statements following an appeal to the Board of Appeals, described the disclosures of the references in detail and the board accepted his description with approval. We have compared it with the phraseology of appellant’s somewhat more elaborate description and find no material discrepancy between them. The description of the examiner being more terse, we quote it, omitting numerals and supplying some bracketed terms to designate particular features shown in the drawings which it is not deemed necessary to reproduce:
In comparing applicant’s structure with the prior art, it is seen that applicant claims a stack elevating mechanism which is alleged to be a patentable improvement over the Foweraker patent. Foweraker shows the basic construction disclosed by applicant, in that * * * [certain] members * * * provide a primary support for carrying a temporary support comprising laths and a first pile of sheets superposed thereon, and means including chains * ♦ * to elevate the primary support and the first pile. * * * [Additional] bars, which are elevated by [second] chains * * * that are normally inactive to elevate [those] bars * * *, provide a second elevating mechanism which is adapted to take over the support of the stack. The[se] bars are swung out of the way of laths * * * as the laths rise, then the bars are swung in and under the laths, and the chains are activated to elevate [the second elevating mechanism] * * * and the first pile superposed thereon, while the primary bars * * * are lowered to receive a new set of laths * * * and a new, second pile is in contact with the bottom of the upper laths * * * and the first pile permits the [primary] chains * * * to elevate the depleted first pile and the second pile, and permits removal of the upper laths * * * at some suitable time to prevent interference with a conventional sheet feeder.
*803 In Foweraker, two pile supports are required. The board * * * has a length less than the distance between [the second] bars * * * and a width greater than the distance between [the primary] bars, whereas the laths * * * have a length greater than the distance between [the second] bars * * * and a composite width less than the distance between [the primary] bars * * *. The dimensions shown are for the purpose of permitting [the] board * * * to be engaged by [the primary] bars * * * but clear [the second] bars * * *, and permitting [the] laths * * * to be engaged by [the second] bars * * * but clear [the primary] bars * * *.
After the foregoing description the examiner compared the three figures of the Foweraker patent drawings with Fig. 1 of appellant’s application drawing and held that such comparison “shows the mode of operation of the two devices to be similar.” He pointed out that appellant substitutes “a second elevator * * * for the elevating chains * * * and bars * * * of Foweraker,” appellant’s second elevator comprising racks vertically moved by pinions and cooperating shafts and pawls mounted on racks.
Omitting certain of the designating numerals, as indicated by asterisks, we quote the following from the examiner’s description of the Seybold patent as shown by its drawings:
The patent to Seybold shows a single elevator structure, comprising vertically movable cross-bar structure including pivotable pawls * * *. In Figure 1, the pawls * * * are shown in solid lines supporting a partially depleted stack. A new pile is already in position to be lifted. Upon final depletion of the upper pile, the pawls * * * are lowered, the dotted drawing of the pawl * * * at the left in Figure 1, showing how the pawls pivot to clear the edge of the pile board * * *. The pawls then pivot back to their normal horizontal position, and are thus underneath the pile board, whereupon lifting of the pawls will elevate the new pile. * * *.
The examiner then stated that the action of Seybold’s pawls in engaging the underside of a new pileboard “is clearly the same, regardless of whether the pawls move downward relative to the pileboard, or whether the board were to move upward relative to the pawls.”
It is noted that appellant’s fourteenth reason of appeal alleges that “The Board of Appeals and the examiner erred in matters of fact.” Just what was meant by this is not clear to us from anything said in the very well prepared brief for appellant, but, at any rate, the correctness of the examiner’s description of the several devices as disclosed by the drawings is not challenged.
We think the following statement, taken from the brief of appellant, will aid those who may read this decision in understanding the actual issue involved here:
In tbe printing of paper sheets, it is advantageous to associate with the printing machine, apparatus for supplying and feeding sheets to the printing machine. Various types of sheet-feeding devices have been developed. One type *804 that was desirable includes a board or equivalent device for supporting a pile of sheets, from the top of which pile sheets were removed and fed to the printing machine. This type of sheet feeding device includes primary elevating means for raising the board and the pile supported thereon as sheets are removed from the top of the pile to maintain the top of the pile at a constant height. This ensured the proper operation of the means for transferring a sheet from the top of the pile to the printing machine. In this type of sheet-feeding device, an auxiliary elevating means was provided to continue the elevation of the pile of sheets and to enable the primary elevating means and the board to be lowered ready to receive á new pile of sheets. To permit the pile to be raised by the auxiliary elevating means, the board supporting the pile of sheets had a number of laths placed on the upper surface thereof beneath the pile of sheets. These laths projected beyond the edges of the board to be engaged by the auxiliary elevating means. After the auxiliary elevating means engaged the laths, to raise them, the primary elevating means and the board were lowered to receive another- set of laths and a new pile of sheets. The new pile of sheets was moved up until the top sheet engages [sic] the laths supported by the auxiliary elevating means and then the laths were withdrawn. Obviously, this sheet-feeding device required the use of two sets of laths and a pile board which has been found to be a decided disadvantage offsetting some of the advantages of the device.
It seems apparent that the device which is described in the foregoing excerpt substantially corresponds to the drawings of the Foweraker patent although it is not so stated in the brief. That description is immediately followed by the further statement:
Appellant’s invention is an improvement over the prior device as discussed above and overcomes the principal disadvantages thereof.
Appellant’s invention provides sheet feeding apparatus in which a one piece pile board is transferred as a whole with the sheets carried thereby from the primary elevating means to the auxiliary elevating means.
The brief then proceeds with an elaborate description of the two reference patents which is not out of harmony in any material respect with the description of them, hereinbefore stated, by the examiner which was approved by the Board of Appeals.
It is true that there is a limitation in claim 13 which reads:
* * * at least one pawl carried by the auxiliary elevating means in the patli of elevation of the board by the primary elevating means and arranged to be pressed out of that path by the board as it is elevated and to return into the path after the passage of the board ready to engage and to lift the board on operation of the auxiliary elevating means.
Appellant contends that this limitation represents an inventive improvement over the Seybold patent. This view seems to have been urged before both the examiner and the Board of Appeals. The latter said concerning it:
* * * In view of the teaching of Seybold who employs a solid board to support the pile of sheets as does appellant, we think it would be obvious to dispense with Foweraker’s laths * * * and let the pile rest directly on the board * * * *805 of that patent or the supporting board * * * of Seybold could be substituted for both laths * * * and board * * * of Foweraker. This seems to us to be an obvious expedient which is devoid of inventive quality and under such circumstances there exists no problem of lath removal.
It is our opinion from the disclosures which have been quoted, supra, that the substitution suggested in the limitation of claim 13 did not constitute invention and that the rulings below to that effect properly expressed the law.
In the brief of appellant there is a statement reading:
Seybold does not disclose or suggest that bis elevator could be used in any manner other than that disclosed.
However, the brief of the Patent Office Solicitor before us directs attention to the following statement in the Seybold patent specification:
The mechanism of the present invention is readily adapted to existing feeders and does not require any changes in the feeding mechanism or in the pile board lifting drive. The only changes required are in the brackets and in the provision of the supports and rails for the lower board.
The brief of the Solicitor continues:
Seybold, thus, teaches modification of existing feeders to accomplish the object of providing “means for automatically associating a paper pile board with its lifting mechanism” by an “arrangement of lifting lugs carried by lifting brackets whereby a loaded paper pile board may be automatically engaged and lifted by a downward and then upward movement of the brackets — .” * * *
In thus suggesting the application of the pivoted pawl lifter to existing feeders, there appears to be no basis for the appellant’s statement, “Seybold does not disclose or suggest that his elevator could be used in any manner other than that disclosed.” * * *.
Even without such direct suggestions in the Seybold patent, it is believed that the concept of applying the pawl-type lifter to Foweraker would be apparent to anyone seeking to improve the latter device. In view of the explicit instructions given by Seybold, it is believed conclusive that nothing unobvious can be found in the idea of adapting his conveyor to other less efficient pile lifters. [Italics quoted.]
The Seybold patent bears date of October 5,1937. The application for it was filed November 30, 1935. The application of Foweraker, upon which a patent was issued June 18, 1940, was filed October 16, 1939, more than four years after the Seybold patent had issued.
In the brief on behalf of appellant it is said:
Actually, the Seybold patent was granted more than two years before the . Foweraker application was filed, and, presumably at least, the disclosure of Seybold was well known to Foweraker. This would seem to raise a question as to why Foweraker did not employ the Seybold elevator as his auxiliary elevator rather than the device he actually did use. The answer is that it was not obvious to Foweraker to construct an apparatus that would use the Seybold elevator. * * *. Foweraker conceived an apparatus that employed two elevators, *806 the cables of which were so related that it was necessary to use the laths in conjunction with the pile board.
We are not impressed that the foregoing argument is sound. Sey-bold’s patent for a single elevating device was in effect when Foweraker’s application was filed. Whether the latter had ever seen the Seybold patent does not appear in the record before us, but assuming, as appellant appears to assume, that it was well known to him, it does not seem probable that he would have deliberately infringed the Seybold patent by inserting the Seybold device in his own.
Appellant’s application, of course, is for a combination. We think it clear that the inventive concept involved in the combination of primary and auxiliary elevating mechanisms was taught by Seybold and actually practiced by Foweraker.
It is not enough that a thing is new and useful, it must amount to an invention or discovery to be entitled to protection under the patent laws. Thompson et al. v. Boisselier et al., 114 U. S. 1. An improvement, to be protected under the patent laws, must be the product of some exercise of inventive faculties and involve something more than that which is obvious to persons skilled in the art. Pearce v. Mulford, 102 U. S. 112; In re Cady, 27 C. C. P. A. (Patents) 1208, 111 F. (2d) 899, 45 USPQ 576.
The appeal as to claims 22, 24 and 25 is dismissed and, the decision of the Board of Appeals as to claims 13, 21 and 23 is affirmed.